Bethlehem Mines Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Michael Vinansky, Respondents.

Argued November 3, 1978, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Stephen I. Richman,* with him *Arthur M. Wilson, Gary L. Sweat,* and *Greenlee, Richman, Derrico & Posa,* for petitioner.

*Benjamin L. Costello,* for respondents.

OPINION BY JUDGE MACPHAIL, February 27, 1979:

Bethlehem Mines Corporation (Employer) appeals from a decision of the Workmen's Compensation Appeal Board (Board) awarding workmen's compensation benefits to Michael Vinansky (Claimant)[1] on the basis that he was totally and permanently disabled by coal worker's pneumoconiosis (CWP).

Claimant was employed by various coal companies underground from 1928 to the date of his last employment on February 5, 1974. He filed his claim for workmen's compensation benefits under Section 108 (q) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of October 17, 1972, P.L. 930, 77 P.S. §27.1(q).[2]

Numerous exhibits and much testimony were presented at the referee's hearings. Three physicians testified for Claimant, two for Employer and a deposition of yet another physician was offered by the Commonwealth. The reason for all of the medical testimony and most of the exhibits was to determine

---

[1] Claimant is one of a group of eight persons who have filed petitions against Employer for a determination of the issue raised in the instant case.

[2] The term 'occupational disease' as used in this act, shall mean only the following diseases.

. . . .

(q) Coal worker's pneumoconiosis, anthraco-silicosis and silicosis (also known as miner's asthma or black lung) in any occupation involving direct contact with, handling of or exposure to the dust of anthracite or bituminous coal.

whether a claimant who contracted Category 1 Simple CWP was totally disabled, thus entitling him to workmen's compensation benefits. The referee concluded that Claimant was entitled to benefits and the Board affirmed.

In this appeal Employer contends that the Board erred when it refused to remand the case and appoint an impartial expert under Section 420 of the Act, 77 P.S. §831, and that it erred when it affirmed the referee's finding of total disability in the face of "the universal scientific fact that Category 1 CWP has no symptoms and does not cause disability."

We find no error in the Board's refusal to appoint an impartial expert in this case. Employer contends that such an expert was necessary to enable the Board to determine whether it is a universal scientific fact that Category 1 CWP is not disabling. The language of Section 420 gives the Board, department or referee the authority to appoint impartial physicians or surgeons to examine and report on the claimant's injuries and the authority to appoint "such other experts as shall be necessary to ascertain the facts." Obviously, the appointment of such witnesses is within the Board's discretion. *Workmen's Compensation Appeal Board v. Delgado,* 22 Pa. Commonwealth Ct. 138, 348 A.2d 447 (1975). In *Forbes Pavillion Nursing Home, Inc. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 352, 357-58, 336 A.2d 440, 444 (1975), Judge BLATT wrote:

> Section 420 of the Act, 77 P.S. §831, empowers the referee, the department or the Board to appoint impartial experts. This authority, it should be noted, is included not within those provisions of the Act describing the appellate powers of the Board, but rather within those sections describing the fact finding powers of the referee, the department, and the Board. It,

therefore, provides no special exception to the Board's scope of appellate review, and consequently would apply only where the Board may make independent factual findings: i.e., where the referee's findings are not supported by competent evidence and it becomes proper for the Board to take additional evidence. (Footnote omitted.)

In the instant case the Board held that the referee's findings were supported by sufficient, substantial evidence and that it had no duty, nor was it necessary, to appoint another expert. True, there was an issue of fact raised by Employer's expert, Dr. Morgan. Claimant presented his expert, Dr. Hunter, in rebuttal. The referee was unpersuaded by Employer's expert's opinion that no category of Simple CWP can be totally and permanently disabling. The Board concluded from its review of the evidence that Employer had failed to prove "as a universal scientific fact" that Category 1 CWP cannot be totally disabling. The referee and the Board resolved the conflict presented by the testimony of the two experts and the various scientific documents admitted into evidence. Both experts were extensively examined on direct and cross-examination before the referee. Their qualifications were placed under a microscope. We must agree that the Board's decision that it had all the evidence it needed to decide the crucial fact before it was not an abuse of its discretion. The testimony of a third expert to decide which of the two experts who had already testified was correct might well be a forfeiture of the Board's and the referee's fact-finding function.

The more critical question for us is the issue of whether the referee and the Board found a fact (Claimant's total disability from CWP) contrary to universal scientific fact. While this is fundamentally a "substantial evidence" issue, it is not presented

here in the context of credibility of witnesses or resolving conflicts in the testimony. Rather, Employer insists that the cumulative effect of the testimony and the exhibits it presented demonstrated that it is a universal scientific fact that Category 1 Simple CWP cannot cause total and permanent disability and that opinions of experts which are contrary to that universal scientific fact simply have no probative value.

Before Employer's argument can prevail, it must appear from the evidence that (1) Claimant here had Category 1 Simple CWP and (2) Employer has proved that it is a universal scientific fact that Category 1 CWP is not totally disabling.

Dr. Ianuzzi testified that Claimant was totally and permanently disabled due to CWP on the basis of x-rays showing small nodular opacities in all six lung fields, the results of pulmonary function studies taken at Washington Hospital and the standard match test which disclosed that Claimant could not extinguish a match six inches from his mouth. The doctor classified his diagnosis as "CWP UICC P 1/1." Further, the doctor testified that there was no single objective medical scientific test that would indicate conclusively that a patient was or was not totally disabled by CWP.

Dr. Wadhwani also testified for Claimant that in his opinion Claimant was totally disabled from CWP as of October 8, 1974. The doctor reached a contrary opinion when he examined Claimant in April of 1974. At that time Dr. Wadhwani found that while Claimant was afflicted with CWP Category 1, chronic bronchitis and rhinitis, he was not totally disabled from CWP. His further re-evaluation six months later led him to a different conclusion. He was carefully cross-examined concerning the basis for his change in opinion. Apparently, the referee found that his explanation was plausible.

Dr. Wald testified for the Commonwealth that Claimant suffered from chronic bronchitis. His medical report dated November 1, 1974, stated that he found "no evidence of pneumoconiosis." He concluded, of course, that Claimant suffered no disability from CWP.

Dr. Hannon's medical report dated January 10, 1975, offered by Employer, did find evidence of CWP 1-0, but concluded that Claimant was neither disabled by that disease nor by any other occupational or nonoccupational disease.

Neither Dr. Morgan nor Dr. Hunter had personally examined Claimant, although Dr. Morgan did review Claimant's medical records.

At this point, if the sole issue were that of substantial evidence to support Claimant's contention that he was totally disabled from CWP, that issue could be easily resolved since we have held repeatedly that the ultimate fact-finder where the Board takes no additional evidence is the referee and that the Board must affirm where his findings are supported by substantial evidence. *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

As we have previously noted, Employer contends that none of Claimant's evidence has any probative value because it is contrary to scientific fact. Courts may properly refuse to admit evidence which is contrary to scientific principles or in conflict with natural laws. 29 Am. Jur. 2d *Evidence* §261 (1967); 30 Am. Jur. 2d *Evidence* §1086 (1967). Thus, our Supreme Court has held that courts are not required to believe that which is contrary to human experience and the laws of nature or which flies in the face of infallible physical fact. *Seiwell v. Hines,* 273 Pa. 259, 116 A. 919 (1922). However, where the Court cannot say as a matter of law that the testimony of a wit-

ness *is* contrary to scientific principles or the laws of nature, the question of the conflict in the evidence is still for the fact-finder to resolve. 30 Am. Jur. 2d *Evidence* §1086 (1967).

In the instant case Employer contends that we must hold as a matter of law that the testimony of Drs. Ianuzzi and Wadhwani is incredible because medical science has established that Category 1 CWP cannot cause disabling impairment. In the Board's opinion, it pointed out many instances where the printed material cited by Employer as demonstrating a universal scientific fact fell somewhat below that qualitative standard because of the use of such words as "likely," "may," "most likely" and "generally" used in connection with conclusions regarding symptoms and disability associated with Simple CWP. Employer argues to us that the Board's observations in this respect are misleading because the quoted texts referred to *all* Simple CWP (Categories 1, 2 and 3), whereas the instant case is limited to a consideration of class 1 CWP. Unfortunately for Employer, there are two conclusions possible from the scientific statements used by Employer concerning Simple CWP. They may very well refer only to Categories 2 and 3, but they might just as well refer to all three categories. Where the authors of such prestigious articles fail to make necessary distinctions within their general statements, neither we nor Employer can do so. While the scientific material assembled by Employer is impressive, it falls considerably short of such universally accepted scientific facts as the law of gravity or the effect of the suction power (or lack thereof) of a moving freight train on a car parked on an upgrade with its brakes set. *Seiwell v. Hines, supra.* In its brief and in its oral argument Employer proceeds with no difficulty from the printed word to a universal scientific fact. For example, in its brief

Employer quotes from National Coal Board (Great Britain) Medical Service Annual Report (1972-73), page 7, as follows: "[I]t must be remembered that Category 1 pneumoconiosis is the earliest radiological sign of dust retention in the lungs; it is not generally regarded by informed medical opinion as a disease process." From that language Employer concludes that Category 1 CWP *is not a disease.* One scientific source stating that it is not "generally" regarded by "informed medical opinion" that Category 1 CWP is a disease hardly leads one to the inescapable conclusion that such is a universally accepted scientific fact. Neither can we conclude as a matter of law that Employer has proved as a universally accepted scientific fact that Category 1 CWP cannot cause disabling impairment. Therefore, the evaluation of the conflicting evidence was for the fact-finder.

In conclusion we note that in Pennsylvania benefits are available under the Act to persons afflicted with "coal worker's pneumoconiosis" without distinction between "Simple" and "Complex" and without distinction among Categories 1, 2 or 3. In the present state of the law all that is required of a claimant is to prove that he has the disease, that there is a causal connection between his occupation and the disease and that he has been disabled. Any additional restrictions on entitlement to benefits are within the province of the Legislature.

We affirm.

ORDER

AND Now, this 27th day of February, 1979, the order of the Workmen's Compensation Appeal Board, dated January 26, 1978, affirming the award of benefits to Michael Vinansky, Claimant, for total and permanent disablement due to pneumoconiosis, is affirmed.

It is ordered that judgment be entered for Michael Vinansky and against Bethlehem Mines Corp. and the Commonwealth of Pennsylvania at the rate of $106.00 per week beginning August 15, 1974. Of the said weekly amount of $106.00, the Commonwealth shall be liable for the payment of 75 per cent, or $79.50, and Bethlehem Mines Corp. shall be liable for payment of 25 per cent or $26.50. The award against Bethlehem Mines Corp. shall bear interest at the rate of 10 per cent per annum.

In addition, the defendant shall pay the following costs incurred by Claimant or incurred in his behalf: (1) to Michael Vinansky, Claimant, for physical examination of Claimant at Centerville Medical Group, $131.00; (2) to United Mine Workers of America, c/o Kenneth J. Yablonsky, 938 Penn Avenue, Pittsburgh, Pa. 15222, for testimony of Dr. C. Charles Ianuzzi, $100.00; (3) to United Mine Workers of America, c/o Kenneth J. Yablonsky, 938 Penn Avenue, Pittsburgh, Pa. 15222, for stenographers' bills, Haze/Schmitt Reporting, Inc., for Dr. Wald's deposition, $16.00.