512 A.2d 62

Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Workers' Compensation, Petitioner *v.* Workmen's Compensation Appeal Board (Bryan Kennedy, Jr., and Vanderbilt Slag Company), Respondents.

Vanderbilt Slag Company, Petitioner *v.* Workmen's Compensation Appeal Board (Kennedy), Respondents.

Argued February 4, 1986, before Judges ROGERS and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Thomas D. Gould,* Assistant Counsel, with him, *Arthur P. Tonozzi,* for petitioner/respondent, Department of Labor and Industry.

*Leta Pittman,* with her, *A. J. Plastino, II,* for petitioner/respondent, Vanderbilt Slag Company.

OPINION BY SENIOR JUDGE BARBIERI, June 19, 1986:

Vanderbilt Slag Company, last employer of Bryan Kennedy, Jr., Claimant, and Commonwealth of Pennsyl-

vania, Bureau of Workers' Compensation, come before this Court in separate appeals on an order of the Pennsylvania Workmen's Compensation Appeal Board (Board), which affirmed an award to Claimant by a referee for total disability under Section 108(q) of the occupational disease provisions of The Pennsylvania Workmen's Compensation Act (Act).[1] We will affirm the award and reverse in part on the appeal of the Commonwealth.

The unfortunately extensive litigation in this case stems from Claimant's claim for total disability as of August 16, 1974 in a petition filed on August 26, 1974. Since that date there have been four decisions of the referee and four opinions by the Board, including Board action in reversing referee's decisions awarding benefits under Sections 108(k)[2] and 108(n),[3] whereas the ultimate and existing final order of the compensation authorities awards compensation benefits under Section 108(q).

Actually, our examination of the record as a whole and of all of the decisions by the referee and by the Board leads us to conclude that sections of the Act with which we are here concerned are Sections 108(q), 301(e)[4] and 305.1.[5] These sections are set forth in the Act as follows:

(q) Coal worker's pneumoconiosis, anthracosilicosis and silicosis (also known as miner's asthma or black lung) in any occupation involving direct contact with, handling of, or exposure to the dust of anthracite or bituminous coal.

. . . .

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §271(q).

[2] 77 P.S. §27.1(k).

[3] 77 P.S. §27.1(n).

[4] 77 P.S. §413.

[5] 77 P.S. §411.1.

(e) If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

. . . .

Section 305.1. Any compensation payable under this act for silicosis, anthraco-silicosis or coalworker's pneumoconiosis as defined in section 108(q) for disability occurring on or after July 1, 1973. . . . If the disability begins between July 1, 1973 and June 30, 1974, inclusive, the employer shall pay twenty-five per centum and the Commonwealth seventy-five per centum; if the disability begins between July 1, 1974, and June 30, 1975, inclusive, the employer shall pay fifty per centum and the Commonwealth fifty per centum; . . .

In addition, both parties contend that there is no compensable exposure after June 30, 1973, denying liability under the Act because of the provision therein which reads

The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the *hazard* of occupational disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act. (Emphasis added.)

Under this combination of statutory provisions in the Act, both appellants first assert that there is insufficient

proof of any coal hazard exposure, as required in Section 108(q), after June 30, 1973.[6]

The referee's relevant findings on this issue are the following:

. . . .

8. That the Claimant was employed as follows:
(a) Kennedy Coal Company from 1941 to 1971 as a miner and later as a bulldozer operator in strip mines.
(b) Vanderbilt Slag Company as follows:

(1) Slag bulldozer operator from January 24, 1972 to November 18, 1972.

(2) Claimant was employed in the company's coal operations from November 2, 1972 to May 20, 1973.

(3) Slag bulldozer operator from May 21, 1973 to October 10, 1973.

. . . .

10. That after a careful and very extensive review of all the records, the testimony, exhibits, and particularly the medical evidence submitted in this matter, your Referee finds as a fact and chooses to believe the reports dated August 16, 1974 and January 8, 1977 of Dr. J. D. Silverman in whose opinion the Claimant is totally and permanently disabled from anthracosilicosis as of the date of his examination on *August 16, 1974*

---

[6] Exposure after June 30, 1973, is required under Section 302(c)(2) to establish jurisdiction under the Act. The relevant provision reads:

The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act.

and that said disability is the result of Claimant's accumulated dust exposure in and around the coal mines, including strip mines, and exposure to dusts in slag pile operations. (Emphasis added.)

11. That Claimant's exposure to silica and coal dusts in slag pile operations for the period after June 30, 1973 to October 10, 1973 also contributed to his disability.

12. That Claimant's exposure to dusts while employed in the slag pile operations from 6/30/73 to 10/10/73 contributed to Claimant's pre-existing accumulative exposure to dusts during Claimant's employment in the coal industry from 1941 to 1971 and in the coal operations of Vanderbilt Slag Company from 11/2/72 to 5/20/73.

. . . .

16. That the herein Claimant was exposed to silica and coal dust during his employment in the coal and slag operations industries in which anthracosilicosis is a hazard and it is presumed that the Claimant's occupational disability arose out of and in the course of his employment in both the coal and slag operations industries and which presumption was not successfully rebutted by the defendant.

Finding of Fact No. 16, of course, is recognition of the presumption created in Section 301(e), quoted above.

Although it is urged upon us by appellants that the sole basis for the finding of exposure to coal dust after June 30, 1973, was in the medical report of Dr. J. D. Silverman, we must disagree. Claimant, himself, testified concerning his work as a slag bulldozer operator in the period from May 21, 1973 to October 10, 1973, as follows:

Q. Did you deal with anything other than slag in your work?

A. Yes, there was lots of ashes down there.

Q. What kind of ashes?

A. There was burnt ashes, coke ashes, and *it had coal in it*. (Emphasis added.)

. . . .

Q. Do you know what the composition of the ash pile was? That's what he's asking you?

A. Oh, well, yes. It looked like it was ashes and *it had coal in it*. (Emphasis added.)

Although Vanderbilt Slag offered and had admitted a statement purporting to present an analysis of "SLAG," such a report, even if not objected to, is not incontrovertible and may be accepted or rejected by the referee. In fact, this Court has twice rejected the contention that a fact finder may not disagree with a "universal scientific fact," holding that a referee could find in favor of the claimant regardless of such testimony of experts indicating that the cause of injury or death was scientifically impossible on the facts. *Latrobe Steel Co. v. Workmen's Compensation Appeal Board (Dominick)*, 41 Pa. Commonwealth Ct. 460, 399 A.2d 465 (1979); *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Vinansky)*, 40 Pa. Commonwealth Ct. 611, 398 A.2d 725 (1979). Furthermore, our Courts have supported the findings of an occupational disease exposure based upon the testimony of the claimant. *Houze Glass Corp. v. Workmen's Compensation Appeal Board (Cullen)*, 43 Pa. Commonwealth Ct. 537, 402 A.2d 1124 (1979); *Jones & Laughlin Steel Corp. v. Golmitz*, 28 Pa. Commonwealth Ct. 25, 367 A.2d 323 (1976).

In *Houze Glass*, where the employer's testimony was that the silica hazard had been eliminated from its plant before June 30, 1973, it was held that the referee, nevertheless, could properly accept claimant's testimony

that he saw silica dust in his work areas after June 30, 1973. We stated:

> Since Mr. Cullen's evidence of exposure was substantial, it is beyond our power to direct the referee to make another choice. We find it impossible to believe, as the appellants suggest, that it was ever intended that claimants should in this kind of case be required to prove their exposure after June 30, 1973 by the results of scientific tests of the employers' premises.

28 Pa. Commonwealth Ct. at 540, 402 A.2d at 1126.

Accordingly, we conclude that there was adequate exposure to "the dusts of anthracite or bituminous coal" during the period of Claimant's employment with Vanderbilt after June 30, 1973 to support an award under Section 108(q) of the Act.

There remains the question whether there is error in awarding against the Commonwealth seventy-five per centum of the compensation due the Claimant, rather than fifty per centum which, the Commonwealth contends, would be the Commonwealth's obligation under Section 305.1, quoted above, for disability under Section 108(q) that begins during the period July 1, 1974 and June 30, 1975. Since the disability here, as found by the referee, occurred on August 16, 1974, in the absence of any other accounting for the decision reached by the referee and Board, we must conclude that there was error in assessing seventy-five per centum of the compensation liability against the Commonwealth, and that the only proper allocation would be fifty per centum assessed against each of Vanderbilt and the Commonwealth. Accordingly, we will so order.[7] See *Commonwealth of Pennsylvania v. Workmen's Compensation Appeal Board (Campbell)*, 38 Pa. Commonwealth Ct. 588, 394 A.2d 633 (1978).

---

[7] Vanderbilt Slag also contends, not joined by the Commonwealth, that the Board erred in entering an illegal remand order in

ORDER

Now, June 19, 1986, the order of the Workmen's Compensation Appeal Board, No. A-84428, dated May 17, 1984, is hereby affirmed as to liability to the Claimant, but reversed as to allocation of that liability which is hereby ordered to be paid fifty per centum by the Employer and fifty per centum by the Commonwealth.

which it allegedly usurped, the referee's fact finding prerogatives, relying upon our decision in *Holy Family College v. Workmen's Compensation Appeal Board (Kycej)*, 84 Pa. Commonwealth Ct. 109, 479 A.2d 24 (1984). We believe, however, that the remand complained of was proper under *Holy Family* in that the referee's award here was for a silica exposure with an award under Section 108(k), whereas the record actually contains proof of exposure and disability under Section 108(q). *See also Borovich v. Colt Industries*, 492 Pa. 372, 424 A.2d 1237 (1981), where our Supreme Court stated that Section 419 of the Act, 77 P.S. §852, "has been viewed as vesting virtually plenary remand power in the Board . . . ," and concluded

> In any event, the initial findings of fact did not clearly set forth the basis for a rejection of the claim under section 108(n). In such a posture there can be no question of the propriety of the Board's decision to remand for further findings of fact under section 419.

In any event, the Board's comments, if questionable, were harmless, since the final findings were left to the referee.