717 A.2d 483

**MILLER AND SON PAVING, INC., Appellee**

v.

**PLUMSTEAD TOWNSHIP, BUCKS COUNTY, Pennsylvania, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1997.

Decided Aug. 19, 1998.

James C. Schwartzmann, Catherine M. Harper, Fort Washington, for Plumstead Tp.

Terry W. Clemons, Doylestown, for Amicus, Wrightstown Twp.

Thomas L. Wenger, Harrisburg, for Amicus, Twp. Supervisors.

Thomas W. Scott, Harrisburg, for Amicus, Pa. Inv. Council.

Stephen B. Harris, Warrington, for Miller & Son Paving, Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur to determine whether the Commonwealth Court erred in holding that a township zoning ordinance, which was found unconstitutional due to its exclusion of quarrying as a permitted use, automatically effected a compensable temporary *de facto* taking of the landowner's property. For the reasons that follow, we reverse the order of the Commonwealth Court and hold that a per se compensable taking does not result from a zoning ordinance which is ultimately declared invalid.

On June 17, 1988, Miller and Son Paving, Inc., (Miller/Appellee), purchased approximately 150 acres of land in Plumstead Township, Bucks County, (Township/Appellant). On the same day, Miller filed an application with the Township for a curative amendment to the zoning ordinance. Miller contended that the ordinance was unconstitutional because it failed to make provisions for quarrying, bituminous asphalt plants and ready-mix concrete plants. The Board of Supervisors of Plumstead Township denied the application and Miller appealed to the Bucks County Common Pleas Court.

The common pleas court held that the ordinance unconstitutionally excluded quarrying in the Township but denied site-specific relief. The Commonwealth Court affirmed that portion of the common pleas court's order which found that the ordinance excluded quarrying, but reversed the determination that Miller was not entitled to site-specific relief. *Appeal of Miller and Son Paving, Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274 (1993), *alloc. denied*, 538 Pa. 629, 646 A.2d 1182 (Pa.1994). The matter was remanded to the common pleas court to determine the extent to which Miller was permitted to establish a quarry. On remand, the common pleas court entered an order approving the use of the property as a quarry, bituminous asphalt plant and ready-mix concrete plant. The Commonwealth Court thereafter reversed, but only as to the common pleas court's approval of asphalt and concrete plants.

In the meantime, Miller had filed a petition for the appointment of a board of viewers to assess damages for the temporary *de facto* taking of the property during the period in which Miller was precluded from quarrying while challenging the constitutionality of the zoning ordinance. Specifically, Miller sought damages for the interest paid on its mortgage, loss of profits due to its inability to quarry and the costs it incurred in the curative amendment proceedings. The Township filed preliminary objections to the petition contending that Miller's claim of a *de facto* taking was not ripe because there was no final determination that the ordinance unconstitutionally excluded quarrying, and that the complaint failed to state a cause of action for a temporary *de facto* taking.

The common pleas court dismissed the Township's preliminary objections without a hearing. It found that the zoning ordinance deprived Miller of the use and enjoyment of its property because the land would have been quarried had it not been for the unconstitutional provision. The court concluded, as a matter of law, that Miller established a compensable temporary *de facto* taking for the period between the date the property was purchased and the date the zoning ordinance was invalidated.

The Commonwealth Court affirmed, finding that the trial court did not abuse its discretion in dismissing the Township's preliminary objections. It relied on the United States Supreme Court's decision in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), for the proposition that Miller was not precluded from bringing an action under the Eminent Domain Code for damages it allegedly suffered during the period of the temporary taking. It rejected the Township's claim that other permissive uses of the property existed. The court held that to establish a *de facto* taking, the landowner must only establish that there were "exceptional circumstances" which substantially deprived the property owner of the beneficial use and enjoyment of his property. It concluded that the enforcement of the ordinance later found invalid constituted such an exceptional circumstance.[1]

■ The issue, in its most basic form, is whether an exclusionary zoning ordinance constitutes a *per se* taking of the property affected by the ordinance. The Township contends that delays attributable to legal challenges to zoning provisions do not automatically constitute a taking because viable uses of the property may remain unaffected by the illegal provision. It asserts that because Miller was never denied all viable or economic use of its property and Miller was ultimate-

1. The appellate scope of review in a case where the trial court has dismissed preliminary objections to a petition for an appointment of viewers is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Faleski v. Department of Transportation,* 159 Pa.Cmwlth. 548, 633 A.2d 1308 (1993).

ly granted the right to quarry, no taking occurred prior to the time when the ordinance was deemed unconstitutional. It further suggests that the decision of *First English* is distinguishable and is expressly limited to its facts. We agree.

 A landowner alleging a *de facto* taking is under a heavy burden to establish that such a taking has occurred. *Zettlemoyer v. Transcontinental Gas Pipeline Corporation,* 540 Pa. 337, 657 A.2d 920 (1995). A taking occurs whenever the entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Id.*[2] In *United Artists' Theater Circuit Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993), we enumerated the following three conditions for determining whether a valid regulatory restriction constitutes a taking requiring just compensation:

(1) the interest of the general public, rather than a particular class of persons, must require governmental action;

(2) the means must be necessary to effectuate that purpose; and

(3) the means must not be unduly oppressive upon the property holder, considering the economic impact of the regulation, and the extent to which the government physically intrudes upon the property.

*Id.* at 381, 635 A.2d at 618.

The Township focuses on the third condition and contends that the ordinance, though ultimately deemed exclusionary, was not unduly oppressive. In discussing that factor in *United Artists,* we noted that a taking does not result merely because a regulation may deprive the owner of the most profitable use of his property. Otherwise, all zoning regula-

**2.** The takings clause in the Pennsylvania Constitution provides:

Nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

Pa. Const. art. I, § 10.

Similarly, the United States Constitution states:

No person ... shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

tions could be categorized as "takings" in the sense that the owner is not completely free to use his property as he chooses. Here, the property was zoned residential. Although the ordinance deprived Miller of the use of quarrying, other viable uses clearly existed.[3] Accordingly, we hold that the lower courts erred in concluding that the invalid zoning ordinance constituted a taking of Miller's property.[4]

*First English* does not require a contrary result. There, the County of Los Angeles adopted an interim ordinance prohibiting the construction or reconstruction of any building or structure in a flood protection area. The appellant, a church that had purchased property in the protected area prior to the adoption of the ordinance, sought damages for the loss of use of the property. The United States Supreme Court held that the Fifth and Fourteenth Amendments to the United States Constitution require that the landowner be compensated for the period of time before it was finally determined that the regulation constituted a taking. This decision is distinguishable from the instant case for several reasons.

First, and most significantly, the Court in *First English* accepted as fact for purposes of its analysis that the landowner was deprived of *all* beneficial use and enjoyment of the property.[5] The Court stated that " 'temporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Id.* at 318, 107 S.Ct.

---

**3.** Miller's 150 acres were zoned R–1 which permitted, *inter alia*, single family detached dwellings, farm and accessory buildings, public buildings, home occupations and accessory offices for a physician, lawyer, clergyman or other profession.

**4.** Moreover, we note that a holding to the contrary could have a chilling effect on land use planning as the adoption of an invalid ordinance could prove financially devastating to a municipality which unsuccessfully defends a lengthy constitutional challenge.

**5.** The Court stated that it "assume[d] that the Los Angeles County ordinance has denied appellant all use of its property for a considerable period of years," and held that invalidation of the ordinance without payment was a constitutionally insufficient remedy. *Id.* at 322, 107 S.Ct. 2378.

2378. Unlike the landowner in *First English*, however, Miller was not denied all use of its property, but was rather illegally denied the use of quarrying.

Second, *First English* did not involve the invalidation of an unconstitutional zoning ordinance. The landowners did not challenge the validity of the ordinance but merely sought damages pursuant to a takings claim. Thus, *First English* does not support the conclusion reached by the Commonwealth Court that an invalid zoning ordinance effects a per se temporary taking. The Commonwealth Court erroneously confused the legal concepts applicable to takings claims and regulation validity issues.[6]

Finally, the decision in *First English* was specifically limited to the facts presented. The Court explained that it "[did] not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us." *Id.* at 321, 107 S.Ct. 2378.[7]

Accordingly, the order of the Commonwealth Court is reversed and the preliminary objections of the Township are sustained.

6. A validity inquiry involves the determination of whether a governmental action is encompassed within its scope of power. In a takings inquiry, however, the question is whether the governmental action effectively deprived the landowner of all beneficial use of his property, regardless of whether the action in question was a valid exercise of governmental power.

7. We recognize that the law of the Commonwealth prior to the decision in *First English* provided that the exclusive remedy for challenging a zoning regulation on the ground that it was confiscatory was under the Municipalities Planning Code. *Kraiser v. Horsham Township*, 72 Pa. Cmwlth. 16, 455 A.2d 782 (1983); *Wyoming Borough v. Wyco Realty Co.*, 64 Pa.Cmwlth. 459, 440 A.2d 696 (1982); *Gaebel v. Thornbury Township*, 8 Pa.Cmwlth. 399, 303 A.2d 57 (1973). In *McClimans v. Board of Supervisors of Shenango Township*, 107 Pa.Cmwlth. 542, 529 A.2d 562 (1987), however, the Commonwealth Court noted in dicta that, pursuant to *First English*, a compensable temporary taking would arise for the period of time that a zoning ordinance conclusively prevented the removal of coal from a coal estate. Unlike the instant case, the ordinance in *McClimans* precluded the single use the property possessed. The Commonwealth Court's reliance on *McClimans* was therefore erroneous.