## Shaner v. Perry Twp.

C.P. of Berks County, no 99-5872.

*Stephen T. Carpenito,* for plaintiffs.
*Allen R. Shollenberger,* for defendant.

STALLONE, *J.,* August 2, 2000—This action involves a claim by the plaintiffs, Susan Shaner, Terry Shaner, Terry Shaner Jr. and Stephanie Shaner, that the defendant, Perry Township, has engaged in a de facto[1] taking of a portion of their real property located in Perry Township, which warrants the appointment of a board of view for the purpose of determining the amount of just compensation due and owing to them. Since 1987, the Shaners have been the owners of two lots located on Route 61 in Perry Township, which are located in a C-2 commercial zoning district and will be referred to as lot no. 6080 and lot no. 6204, the same way in which they were identified in a previously prepared subdivision plan. At the time that they purchased these lots, lot no. 6080 was undeveloped, but lot no. 6204 was improved with a one-story building.

On March 31, 1988, the Perry Township Zoning Hearing Board granted a special exception in the form of a variance to the Shaners to build and thereafter operate a motor vehicle service station on lot no. 6080. Four days later, on April 4, 1988, the Perry Township zoning of-

---

1. All italicized language has been added for emphasis only.

ficer issued occupancy permits for commercial use of the one-story building located on lot no. 6204, which had been divided for three separate tenancies. As of that date, the entire surface of lot no. 6204, including the access driveway for automobiles and the parking lot surrounding the buildings on it, was completely covered by a top layer of crushed stone measuring between one and one and one-half feet deep, together with several layers of crushed stone laid underneath; none of it was paved with either macadam or concrete. After the service station was built, the majority of the surface of lot no. 6080 was covered by crushed stone and the remainder with macadam.

Perry Township did not condition the issuance of either the variance for the newly erected service station on lot no. 6080 or the occupancy permits for the one-story, three-tenant building on lot no. 6204 upon the paving of the portion of the surface of lot no. 6080 that was not paved and/or the entire surface of the access driveway and the parking lot located on lot no. 6204.

Moreover, at least three businesses located within a one-quarter mile radius of the Shaners' two lots have parking areas which have no macadam or concrete topping but are only covered with stone and gravel, two of which have approximately the same frontage on Route 61 and are located on the same side of Route 61 as the two Shaner lots.[2]

Following Perry Township's issuance of the variance and the occupancy permits, the Shaners leased the gas station on lot no. 6080 to tenants Harjeet Birdi and Salio

2. Those three businesses are Ernest Henry Auto Body, Hauck Trailers and Tom Schaeffer's Travel Center.

Kumar, and the one-story building on lot no. 6204 to three tenants: (1) James Fink, t/a Keystone Tire; (2) Dennis Blessing, t/a Keystone Auto; and (3) Alfredo Liguoro, t/a Pizza Como Express. Between 1988 and 1995, the surface of both Shaner lots remained the same in terms of their composition.

However, on August 23, 1995, without any prior notice or warning, Perry Township commenced an equity action against the Shaners,[3] asking the Court of Common Pleas of Berks County to issue a mandatory preliminary injunction against the Shaners ordering them to pave lot no. 6080, in accordance with section 305.1 (e) of the Perry Township zoning ordinance,[4] and to prohibit the Shaners from allowing tractor-trailers to park at night on lot no. 6080 with their engines running, thereby allegedly polluting the air with exhaust fumes and excessive noise, all of which Perry Township claimed constituted a nuisance.[5] That action was docketed to no. 95-6623.

Although Perry Township discontinued that action on November 1, 1995,[6] it commenced a second equity action

---

3. This action was precipitated by complaints received from a neighbor, who complained about an excessive amount of dirt, dust, noise and fumes coming from both lots.

4. Section 305.1(e) of the zoning ordinance provides that:

"All required parking areas and all access drives for commercial or industrial uses shall have a hard homogenous all-weather surface."

5. Perry Township did not commence any similar equity actions against any of the three businesses discussed in note 2, *supra*.

6. Perry Township discontinued this action following two days of hearings held before this court on the Township's request for issuance of a mandatory preliminary injunction, but before this court rendered a judgment on the merits of the township's injunction request.

on February 10, 1996, without any notice or warning, against not only the Shaners but also their five tenants. That second equity action was docketed to No. 96-1805 and, like the first, was assigned to this court. In that second equity action, Perry Township complained of excessive noise, dirt, dust and fumes allegedly coming from not only lot no. 6080, but also from lot no. 6204, and requested the issuance of injunctive relief against the Shaners and the tenants of both lots, as well as civil monetary penalties, as follows:

(1) Relative to lot no. 6080, the issuance of permanent prohibitory injunctive relief against Birdi and Kumar in the form of a decree *prohibiting* them from allowing tractor-trailers to be parked at night at the south end of lot no. 6080 with their engines running, which allegedly resulted in exhaust fumes, odors, excessive noise and excessive amounts of road dust and dirt being discharged from the tractor-trailers;

(2) Relative to lot no. 6080, an award of punitive damages in favor of Perry Township and against the Shaners, Birdi and Kumar; and

(3) Relative to lot no. 6204, the issuance of permanent mandatory injunctive relief against the Shaners in the form of a decree compelling them to pave the access driveway and the parking area located on lot no. 6204 with either macadam or concrete in accordance with section 305.1(e) of the Perry Township zoning ordinance.

Thereafter, Dennis Blessing and Alfredo Liguoro unilaterally terminated their leases with the Shaners and vacated their respective leased premises on lot no. 6204, leaving the Shaners with only one tenant, James Fink, on that lot. When prospective tenants inquired as to the

possibility of the issuance of occupancy permits, they were informed by Richard Furnanage, the Perry Township zoning officer, that he had been instructed by the board of supervisors not to issue any occupancy permits relative to lot no. 6204 while this second equity action was pending.

Following the close of the pleadings, discovery and the holding of a pretrial settlement conference, the parties appeared before this court for a non-jury trial, after which we filed a written adjudication and decree nisi, finding: (1) relative to lot no. 6080, in favor of Perry Township and against Birdi and Kumar regarding Perry Township's request for the issuance of prohibitory injunctive relief against them;[7] (2) relative to lot no. 6080, in favor of the Shaners and against Perry Township regarding Perry Township's request for the issuance of prohibitory injunctive relief against the Shaners; and (3) relative to lot no. 6204, in favor of the Shaners and against Perry Township regarding the township's request for mandatory injunctive relief to require the Shaners to pave the access driveway and parking area.[8] No post-trial

---

7. This court had no choice but to grant relief in favor of Perry Township and against Birdi and Kumar, because they failed to respond to Perry Township's amended complaint as a result of their religious belief that it was inappropriate to become involved in litigation. This led to the entry of a default judgment against them on July 31, 1996, on the basis that they were deemed to have admitted all of the allegations set forth in the amended complaint as a matter of law. Pa.R.C.P. 1029(b).

8. In rendering that judgment, this court reasoned, inter alia, as follows:

"We believe that the term 'hard, homogenous all-weather surface,' which is not defined anywhere in the Perry Township zoning ordinance, is ambiguous at best. And since it was Perry Township and not

motions having been filed,[9] this court made its decree nisi a "final decree" on October 5, 1998.

On June 15, 1999, the Shaners filed a petition for the appointment of a board of view,[10] claiming that the actions of Perry Township in filing the second equity action and in thereafter refusing to issue occupancy permits for the building on lot no. 6204 resulted in an "inverse condemnation," commonly known as a de facto taking, of lot no. 6204 without just compensation, in that Perry Township's actions caused them to lose two tenants, Dennis Blessing and Alfredo Liguoro, and several prospective tenants.[11] On June 18, 1999, this court granted the Shaners' petition and appointed Alan S. Readinger,

the defendants Shaners who drafted the Perry Township zoning ordinance, this court must construe all ambiguities in favor of the defendants Shaners and against Perry Township as it would do, for example, in a contract case."

9. Perry Township did file a written notice seeking clarification of one sentence which appeared on page 16 of this court's adjudication, which this court disposed of by order entered June 30, 1998.

10. The Shaners are seeking to recover just compensation for this alleged de facto taking in the form of lost rent, lost profits, attorney's fees, engineering fees, and costs.

11. In their petition, they set forth the following allegations of fact:

(1) The Shaners are adult individuals who own two parcels of commercial property located along Route 61, Perry Township, Berks County, Pennsylvania. Said parcels are full [sic] described in deed book volume 2342, page 1441 and deed book volume 2478, page 26, in the Berks County Recorder of Deeds. For reference herein the two lots will be designated as lot no. 6080 and lot no. 6204.

(2) The respondent, Perry Township, is a municipal corporation having its principal office located at Moselem Springs Road, Shoemakersville, Perry Township, Berks County, Pennsylvania.

(3) Both lots are used for permitted commercial purposes pursuant to the Perry Township zoning ordinance.

264

Ralph E. Levengood, and Albert M. Shuman as viewers. Perry Township thereafter filed preliminary objections in the nature of a demurrer to the Shaners' petition, claiming that the facts as alleged therein were insufficient to state a claim for a de facto taking. We then or-

(4) Built upon lot 6080 is a gas station which the plaintiffs have leased to Harjeet Birdi and Salio Kumar pursuant to a 10-year written lease agreement with the plaintiffs.

(5) Built upon lot 6204 is a commercial building permitted under the Perry Township zoning ordinance and operating therein was Keystone Auto owned by Dennis Blessing, Pizza Como Express owned by Alfredo Liguoro and Keystone Tire owned by James Fink. Each was operating pursuant to a lease with the Shaners.

(6) On March 31, 1988, the Perry Township Zoning Hearing Board granted a special exception in the form of a variance to the Shaners to operate a gas station on lot 6080.

(7) On April 4, 1988, the Perry Township zoning officer issued occupancy permits to the Shaners for commercial use of the building located on lot 6204.

(8) Each lot has a parking area which is covered with stone, gravel and some macadam. The lot covering was in existence at the time that the uses were originally permitted by Perry Township.

(9) Perry Township did not condition the variance for lot 6080 or the permits for lot 6204 upon paving of the gravel with either macadam or concrete.

(10) The Shaners enjoyed the use of their property through the leasing of the premises to various tenants without interference by Perry Township. Under the terms of the leases the Shaners received certain rental payments from each tenant.

(11) Without notice and warning the respondent filed a complaint in equity against the Shaners and their various tenants on or about February 16, 1996, in the Berks County Court of Common Pleas, docket number 96-1805.

(12) Said complaint alleged that the Shaners and their tenants were in violation of the Perry Township zoning ordinance section 305.1(e). The complaint also alleged a violation of the Pennsylvania Air Pollution Control Act, Act of 1960, January 8, P.L. 2119, as amended (35 P.S. §4001 et seq.).

dered the parties, in lieu of an evidentiary hearing, to take the depositions of various individuals to obtain evi-

(13) The basis for said complaint was that the surface of lots 6080 and 6204 were not paved and that the stone and gravel generated too much dust into the air.

(14) The respondents did not issue any warnings to the Shaners and their tenants prior to instituting suit. They did not permit an opportunity to cure any alleged problems.

(15) The suit sought an injunction compelling the Shaners and their tenants to pave the lots completely which would be a great expense for all parties. In addition, the respondent sought substantial fines for the violations from the Shaners and their tenants.

(16) Located within one-quarter mile of the plaintiffs' lots were at least three other businesses which have lots along Route 61 which are also covered with stone and gravel. The respondents did not file a complaint against those businesses.

(17) The Shaners' lots were covered with gravel and stone for a period of over eight years prior to the commencement of the suit by the respondents.

(18) Said action was an arbitrary and an abusive use of power by the respondent.

(19) On or about May 28, 1998, after a full and complete hearing the Court of Common Pleas, Berks County found in the Shaners' favor and against Perry Township.

(20) However, during the pendency of the legal action the Shaners lost two tenants located on lot 6204. The tenants left the premises out of fear of the fines that were being sought by the respondent as well as the costs associated with the defense of the same.

(21.) The tenant on lot no. 6080 entered into an agreement with the Shaners that they would pave the lot in exchange for a reduction in rent over the term of the lease.

(22) In addition, several other prospective tenants applied for occupancy permits with the Perry Township Zoning Officer but were rejected as a result of the pendency of the legal action. This denied the Shaners the right to obtain replacement tenants for those who had left as a result of the legal action.

(23) By its arbitrary and abusive application of the zoning laws and the filing of the complaint in equity the respondent has taken plaintiff's [sic] property without just compensation and without due process un-

dence to either support or refute issues of fact raised by the petition and the preliminary objections.[12]

In ruling upon these preliminary objections, we note that the Pennsylvania Rules of Civil Procedure state that: "all material facts [alleged] in the [petition] as well as

der the law. Said taking includes the loss of tenants and the right to attract additional tenants.

(24) By its arbitrary and abusive application of the zoning laws and the filing of the complaint the plaintiffs lost the use of their property.

(25) By its arbitrary and abusive use of the judicial process the respondents have taken the plaintiffs' property without just compensation and due process under the law.

(26) When a municipality conclusively prevents a landowner, even temporarily, from using its land, a taking of the landowner's property has occurred and payment of just compensation is required.

(27) When a municipality substantively deprives a landowner of the beneficial use and enjoyment of its property, a taking has occurred and payment of just compensation is required.

(28) A taking, both permanent and temporary, has occurred.

(29) Damages for the taking of petitioners' property include but are not limited to such economic losses suffered as a result of the lost tenants, lost future tenants, lost rents and future rents, lost profits, interest on lost rents and profits, attorney fees. [sic] Costs associated with filing of this action, including filing fees and counsel fees.

(30) A board of viewers is necessary to determine the amount of just compensation to which petitioners are entitled as a result of the unconstitutional temporary taking of their property by respondent.

(31) This petition is filed pursuant to section 1-502(e) of the Pennsylvania Eminent Domain Code (26 P.S. §1-101 et seq.) because no declaration of taking was filed.

(32) In addition to compensation for taking of petitioner's property, petitioner is entitled to delay damages at the commercial loan rate pursuant to 26 P.S. §1-611 and reimbursement for appraisal fees, attorney fees, engineering fees, and other costs and expenses actually incurred pursuant to 26 P.S. §1-609.

12. Depositions were taken of Susan Shaner; Alfredo Liguoro; Richard A. Furnanage; and Ronald L. O'Neil, former chairman of the Perry Township Board of Supervisors.

all inferences reasonably deducible therefrom are admitted as true. . . . The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *MacElree v. Philadelphia Newspapers, Inc.,* 544 Pa. 117, 124, 674 A.2d 1050, 1054 (1996) (quoting *Vattimo v. Lower Bucks Hospital Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983)).

We are also cognizant of the fact that this inverse condemnation action is based upon the principle that, although a taking of real property ordinarily occurs by way of formal proceedings commenced by the government through the exercise of its power of eminent domain, a taking can occur informally as well, where regulation by the government of the use of property goes too far. *First English Evangelical Lutheran Church of Glendale v. County of Riverside,* 482 U.S. 304, 96 L.Ed. 2d 250, 107 S.Ct. 2378 (1987) (citing *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 67 L.Ed. 322, 43 S.Ct. 158 (1922)). And although that taking might be temporary, as opposed to permanent, in nature, just compensation is nevertheless required in the same manner as it is for a permanent taking. *Id.,* 96 L.Ed.2d at 266. Furthermore, no subsequent action by the government can relieve it of a duty to pay just compensation for the period of time that the taking was in effect. *Id.,* 96 L.Ed. 2d at 268.

"A landowner alleging a de facto taking is under a heavy burden to establish that such a taking has occurred." *Miller and Son Paving Inc. v. Plumstead Township,* 552 Pa. 652, 717 A.2d 483, 485 (1998) (citing *Zettlemoyer v. Transcontinental Gas Pipeline Corp.,* 540

Pa. 337, 657 A.2d 920 (1995)). A de facto taking occurs whenever the entity clothed with the power of eminent domain *substantially* deprives an owner of the use and enjoyment of his property. *Id.* at 485.

In *United Artists' Theater Circuit Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612, 618 (1993), the Supreme Court of Pennsylvania identified, and we quote from that decision, the following three criteria that must exist so as to avoid a determination by a reviewing court that governmental action or regulation of property constitutes a de facto taking:

"(1) The interest of the general public, rather than a particular class of persons, must require the governmental action complained of;

"(2) The means employed to effectuate that purpose must be necessary; and

"(3) The means employed must not be unduly oppressive upon the property holder, considering the economic impact of the regulation, and the extent to which the government physically intruded on the property." [13]

As to whether the interests of the general public living in Perry Township, as opposed to a particular class or number of residents thereof, in fact required Perry Township to bring the second equity action, the record reveals that Perry Township decided to file it after allegedly receiving complaints from a very small number of neighbors who lived in the immediate vicinity of the two lots. N.T., deposition of Ronald L. O'Neil, January 19, 2000, pp. 42-44. Of that number, only one of them, Mrs. Lois Crowe, actually testified at the trial. See N.T., non-

---

13. While the case law permits us to also take physical intrusion into consideration, we need not consider that factor as it does not apply in this case, as there is no allegation of physical intrusion.

jury trial, pp. 182-201. There is no evidence that any additional residents of Perry Township registered a complaint about any exhaust fumes, noise, dust, or dirt. N.T., deposition of Ronald L. O'Neil, January 19, 2000, p. 42. Therefore, it is clear that the interests of the general public, as opposed to a particular class or number of residents of Perry Township, did not require Perry Township to take the actions which it did relative to the one-story building located on lot no. 6204.

Secondly, even assuming arguendo that the interests of the general public living in Perry Township necessitated these actions, the means used by Perry Township, *i.e.,* the refusal to issue the occupancy permits while the second equity action was pending, certainly were not necessary to effectuate that purpose, for that equity action was certainly the proper forum for determining whether the Shaners should be required to pave lot no. 6204 with either macadam or concrete in accordance with section 305.1(e) of the Perry Township zoning ordinance. As a matter of fact, Perry Township's refusal to issue occupancy permits served no purpose other than to inflame the already strained relationship between Perry Township and some of its taxpayers.

Thirdly, we are of the opinion that the actions of Perry Township were unduly oppressive upon the Shaners, taking into consideration the economic impact upon them. The record shows that both Dennis Blessing, who was paying $400 a month in rent, and Alfredo Liguoro, who was paying $900 a month in rent (for a total of $1,300), unilaterally terminated their respective leases with the Shaners, because they had been named as defendants in that equity action and were forced to incur attorney's fees and expenses for a problem for which they had no

responsibility, leaving two out of three available spaces unoccupied. N.T., deposition of Susan Shaner, January 20, 2000, pp. 48, 52, 141-42, 146. The record further indicates that the Shaners had at least two prospective tenants[14] who were interested in the now-vacated spaces, but that they were told by Mr. Furnanage that, at the direction of the Perry Township Board of Supervisors, no occupancy permits would be issued while the second equity action was pending. N.T., deposition of Richard A. Furnanage, January 21, 2000, pp. 35, 38; N.T., deposition of Ronald L. O'Neil, January 19, 2000, p. 65; see also, N.T., deposition of Susan Shaner, January 20, 2000, pp. 57-60, 141-45.

And, while we are cognizant of the fact that, under the case law, a de facto taking does not occur simply because a governmental action or regulation deprives a landowner of the most profitable use of his or her property, we are convinced that the facts set forth in the petition, coupled with the evidence of record in support thereof, establish that the Shaners have made out a claim for a de facto taking in that they were *substantially* deprived of the use of their property so as to warrant the appointment of a board of view to determine the amount of just compensation owing to them.

Accordingly, we enter the following attached order.

## ORDER

And now, August 2, 2000, it is hereby ordered that the defendant's preliminary objections to the plaintiffs' petition for appointment of a board of view are overruled.

---

14. These two prospective tenants were Christopher Burns and John Breneman.