Michael T. TOBIN, Jr., Contractors

v.

CENTRE TOWNSHIP.

Michael T. Tobin, Jr. and
Kenneth Styer

v.

Centre Township.

Appeal of: Board of Supervisors
of Centre Township.

Commonwealth Court of Pennsylvania.

Argued June 12, 2008.
Decided July 31, 2008.

See also 670 A.2d 761.

Joan E. London, Wyomissing, for appellant.

Stephen T. Carpenito, Ashland, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Centre Township (Township) appeals an order of the Court of Common Pleas of Berks County (trial court) appointing a board of viewers under the Eminent Domain Code[1] to determine damages caused by the Township's de facto taking. The trial court denied the Township's preliminary objections to a petition for appointment of board of viewers filed by Michael T. Tobin, Jr., Kenneth Styer, and Michael T. Tobin, Jr., Contractors (Tobin Contractors) (collectively, Landowners) because it agreed with Landowners that the fees charged by the Township for reviewing their land development plan had effected a regulatory taking of the land they sought to develop. The principal issue we consider in this appeal is whether the existence of a statutory remedy for challenging a municipality's fees for review of a land development plan precludes a landowner from pursuing a regulatory taking claim under the Eminent Domain Code.

The background to this appeal begins in 1990, when Tobin and Styer purchased a 42–acre parcel of agricultural land in Cen-tre Township, Berks County, which is located in an R–2 residential zoning district and, thus, can be developed. Since 1990, and continuing to the present, this parcel has been farmed by Landowners pursuant to various leases. After Tobin and Styer purchased the parcel, they granted Tobin Contractors the exclusive right to develop the property.

On June 24, 1990, Landowners filed a sketch plan with the Township to develop part of the property into a development to be called "Lincolntown Estates." On July 23, 1990, Tobin Contractors filed a sketch plan with the Township to develop the remainder of the property into a development to be called "Janos Estates." Collectively, the two plans contemplated the construction of 369 homes, consisting of townhouses, duplexes and single residences. Landowners proposed to service the entire development with a sewage treatment facility to be constructed within the development. On June 24, 1990, Thomas J. Dietrich, Jr., the Township Enforcement Officer, reviewed Landowners' sketch plans and sent a letter to the Joint Planning Commission (Commission),[2] with several recommendations for the development.

When Landowners' sketch plans were filed, the Township's fee schedule for the review of land development plans (1989 fee schedule) was as follows: $500 for review of a residential subdivision sketch plan; $500 plus $100 per dwelling unit for review of a residential subdivision preliminary plan; and $500 for review of a final plan. This fee schedule imposed a fee upon Landowners of $500 for review of their sketch plan; $37,400 for review of their preliminary plan; and $500 for review of their final plan.

---

1. 26 Pa.C.S. §§ 101–1106.

2. The Joint Planning Commission is the commission used by both Centre Township and Centerport Borough.

On August 8, 1990, the Township Board of Supervisors (Board) held a public meeting to consider the sketch plan filed by Landowners. The meeting was attended by over 100 residents, who voiced strong opposition to the proposed development.

On October 10, 1990, the Board revised its fees for reviewing land development plans (1990 fee schedule). Under the 1990 fee schedule, the Township charged developers $500 plus $250 per dwelling unit for a sketch plan; $500 plus $250 per dwelling unit for a preliminary plan; and $500 plus $100 per dwelling unit for a final plan. The 1990 fee schedule imposed a fee upon Landowners of $92,750 for review of their preliminary plan and $37,400 for review of their final plan.[3] According to Sally Greth, the Commission Secretary, the fees were increased because the Commission had reviewed too many plans where the fees were inadequate, leaving the Commission without the funds to pay the costs it incurred for consulting engineers and performing percolation and other sewage-related tests. No developer, save Landowners, according to Greth, had ever complained about this fee schedule.

On October 31, 1991, Landowners submitted a preliminary plan to the Township and to the Commission without including the 1990 fee of $92,750 required to be tendered at the time of filing. Landowners proffered the fee owed under the 1989 fee schedule, along with a letter disputing the 1990 fee schedule and offering to negotiate a reasonable fee. Landowners invoked the procedure for resolving fee disputes found in Section 503 of the Municipalities Planning Code (MPC).[4] At a meeting on November 19, 1991, the Commission voted not to accept Landowners' preliminary plan because it had not been accompanied by the proper fee. The Commission refused to negotiate another fee, asserting that Section 503 of the MPC was not applicable.[5]

On December 23, 1991, Landowners filed an action in mandamus, requesting the court to order the Commission to review their preliminary plan while the parties negotiated a reasonable fee for this review. In response, the Township filed preliminary objections in the nature of a demurrer, and the preliminary objections were sustained. Landowners appealed, and this Court reversed the trial court. *Tobin v. Board of Supervisors*, 670 A.2d 761 (Pa.Cmwlth.1996). This Court held that although the Township had the discretion to establish review fees, Section 503 of the MPC also gives a landowner the right to dispute the amount of those fees. *Id.* at 764. Without deciding the merits of Landowners' request for a writ of mandamus, this Court reversed and remanded the matter to the trial court for further proceedings.

On February 1, 1996, Landowners advised the Township that they intended to move for summary judgment on their mandamus action unless the review fee dispute was resolved. On February 20, 1996, the Berks County Prothonotary filed a notice terminating Landowners' mandamus action. However, on that same day, the trial

---

3. The fee for review of Landowners' sketch plan would have been $92,750, but the sketch plan had already been submitted with the fee in effect when filed, *i.e.*, $500.

4. Act of December 21 1988, P.L. 1329, 53 P.S. § 10503. The relevant provisions of Section 503 of the MPC are set forth in the text of the opinion, *infra*.

5. The Township requires land developers to pay fees, as set forth in the Township's fee schedule, into an escrow account when submitting proposed plans for approval. The Township then draws from the fund to pay engineer or consulting fees which arise during the review process. What is not drawn is returned to the applicant.

court issued an order setting aside the prothonotary's action and directing the Township and Commission to negotiate appropriate fees for review of Landowners' land development plans. Trial Court Order of February 20, 1998; Reproduced Record at 632a (R.R. ——). The parties failed to reach an agreement, and each party places the responsibility for this failure on the other. Despite their threat, Landowners did not move for summary judgment or take any other step to bring their mandamus action to a conclusion. The Prothonotary terminated Landowners' mandamus action on April 1, 2002.

On May 11, 1998, the Township again revised the fee schedule (1998 fee schedule), this time to reduce the fees. The fees for review of a preliminary plan under the 1998 fee schedule were as follows: $500 for a plan proposing fewer than 6 dwelling units; $750 for 6–10 dwelling units; $1,500 for 11–20 dwelling units; $2,000 for 21–50 dwelling units; $3,000 for 51–100 dwelling units; and $5,000 plus $100 per dwelling unit for developments with over 100 units. The 1998 fee schedule imposed a fee upon Landowners of $41,900 for review of their preliminary plan for both Lincolntown and Janos Estates. According to Sally Greth, the fees were revised downward because they no longer included the cost of reviewing sewage treatment plans. Those fees are now separately established, depending on the plan and the charges of reviewing engineers and consultants.[6]

In the fall of 1998, Landowners filed a Section 1983 civil rights action in federal court asserting a violation of rights established under federal statutes and the United States Constitution. *Tobin v. Board of Supervisors of Centre Township* (E.D.Pa. No. 98–4596). Landowners sought punitive damages, lost profits, economic damages, interest and costs.

On October 29, 1998, Tobin Contractors filed the instant petition for appointment of a board of viewers, alleging a *de facto* taking by the Township and requesting a determination of just compensation. 26 Pa.C.S. § 502 (authorizing landowner to petition for "appointment of viewers to ascertain just compensation").[7] On September 1, 2000, Tobin and Styer filed a second petition for appointment of viewers, and the two petitions were consolidated. The Township filed preliminary objections to both petitions, seeking their dismissal for the following reasons: failure to plead the facts necessary to support a claim of a *de facto* taking; failure to exhaust statutory remedies; and pendency of the federal action. In the meantime, Landowners' Section 1983 action was placed on the civil suspension docket pending resolution of their petition for appointment of viewers.

The parties engaged in extensive discovery on the issues raised by the Township's preliminary objections and agreed to a stipulated record, using various documents and depositions obtained in discovery. That record included, *inter alia*, the fees charged for review of a preliminary plan submitted by Glen Sandritter for a proposed development consisting of 97 single-family homes, 24 multi-family homes and 6

6. On December 18, 1998, Landowners submitted a preliminary plan only for Lincolntown Estates. The filing did not include the fee of $15,100, which was required under the 1998 fee schedule. The filing is not considered active by the Commission and Township.

7. Landowners filed their petitions for appointment of a board of viewers under the former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112. The provision for appointment of viewers, which is substantially similar to its predecessor in the repealed code, is now at 26 Pa.C.S. § 502.

commercial lots. Forty-one of the lots were proposed for the Borough of Centerport, and 86 were proposed for the Township. Sandritter was charged a $3,000 fee for review of his preliminary plan. Under the 1990 fee schedule, which was in effect when Sandritter filed his plan, Sandritter's plan required a fee of $30,750.

■ After hearing argument on the Township's preliminary objections, the trial court overruled the Township's preliminary objections and granted Landowners' petition for appointment of a board of viewers. The trial court found that the 1990 fee schedule imposed oppressive and unreasonable fees and, further, the Township should have reviewed Landowners' preliminary plan when filed in 1991, during which review the amount of fees could have been resolved by negotiation. Based upon the fees charged to Sandritter, the trial court found that the 1990 fee schedule was inconsistently enforced and its adoption "suspicious," probably done in response to the negative response of Township residents to Landowners' development plan. On the other hand, because Landowners failed to pursue their mandamus action once it was remanded, they bore some responsibility for the taking. Accordingly, the trial court found that the regulatory taking began on October 10, 1990, the date the fee schedule was revised, and extended to February 25, 1996, the date on which the trial court resumed jurisdiction over the mandamus action. The Township appealed.[8]

The Township contends the trial court erred in overruling its preliminary objec-tions to Landowners' petition for appointment of a board of viewers. In support, the Township raises four arguments. First, it contends that Landowners' petition was defective because a taking does not occur merely because regulation deprives the landowner of the most profitable use of his property. Second, it contends that the remedies under the MPC barred Landowners' ability to pursue a *de facto* condemnation. Third, it contends that Landowners' petition was barred by their Section 1983 action in federal court. Finally, although irrelevant to any of its legal theories, the Township contends that substantial evidence did not support the trial court's finding of discrimination in the adoption of the 1990 fee schedule.

■ This is a case of first impression because there is no precedent for the proposition that a municipality's fees charged for the review of a land development plan can effect a *de facto* taking of the developer's land. As this Court has explained, a *de facto* taking occurs when "the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *Snap–Tite, Inc. v. Millcreek Township,* 811 A.2d 1101, 1105 (Pa.Cmwlth.2002) (quotation, citation omitted). The standard for proving a regulatory taking of land is particularly stringent:

> [P]roperty owners bear a heavy burden of proof and must show that *exceptional circumstances exist which substantially deprive them of the use of their property* and, further, that such deprivation is the

---

8. In an eminent domain case disposed of on preliminary objections to a claim for *de facto* taking, this Court's review is limited to determining whether the trial court's findings are supported by substantial evidence and whether it committed an error of law or an abuse of discretion. *Newman v. Commonwealth,* 791 A.2d 1287, 1289 n. 4 (Pa.Cmwlth.2002). The trial court is charged with resolving evidentiary conflicts, and when its factual findings are supported by substantial evidence they will not be disturbed on appeal. *In re Condemnation by Commonwealth, Department of Transportation,* 827 A.2d 544, 547 n. 4 (Pa.Cmwlth. 2003).

direct and necessary consequence of the actions of the entity having the power of eminent domain.

*Id.* at 1106 (emphasis added) (citation omitted). As explained by our Supreme Court in *Machipongo Land & Coal Co. v. Department of Environmental Protection*, 569 Pa. 3, 27, 799 A.2d 751, 765 (2002), there are two types of regulatory takings. The first deprives the landowner of *all* economically beneficial or productive use of the subject property. This form of regulatory taking is known as a *Lucas* taking and is very rare.[9] The second and more traditional taking is known as a *Penn Central* taking,[10] which falls short of a *Lucas* taking but nonetheless "goes too far." *Id.* at 27, 799 A.2d at 765. The essence of the *Penn Central* type of regulatory taking is that it forces "some people alone to bear public burdens which in all fairness and justice should be borne by the public as a whole." *Palazzolo v. Rhode Island*, 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (*quoting Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)).[11]

In disposing of the Township's preliminary objections and granting Landowners'

petition for appointment of a board of viewers, the trial court held as follows:

[Township] has *de facto* condemned [Landowners'] high density residential development interest in [Landowners] property recorded at Record Book 2125, Page 1560, Berks County Record[.]

Trial Court Order of October 31, 2007, at ¶ 3. The Township argues that this conclusion, as recited, falls far short of the mark needed to find a regulatory taking. We agree.

 Losing one of several uses of land does not constitute a taking. As our Supreme Court has explained,

a taking does not result merely because a regulation ... deprive[s] the owner of the most profitable use of his property. Otherwise all zoning regulations could be categorized as "takings" in the sense that the owner is not completely free to use his property as he chooses.

*Machipongo*, 569 Pa. at 26, 799 A.2d at 764 (emphasis added) (quoting *Miller & Son Paving, Inc. v. Plumstead Township*, 552 Pa. 652, 656–657, 717 A.2d 483, 486 (1998)). Accordingly, a landowner who was stopped from operating a quarry was not entitled to compensation because there were "other viable uses" of his land. *Miller*, 552 Pa. at

9. The *Lucas* test was developed in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A regulation that deprives an owner of "all economically beneficial or productive use of land" constitutes a taking that requires compensation. *Lucas*, 505 U.S. at 1015, 112 S.Ct. 2886. The only exception is where the proposed use of the land constitutes a public nuisance, and the landowner could have expected that the government would prohibit the use. *Lucas*, 505 U.S. at 1027–1029, 112 S.Ct. 2886.

10. The *Penn Central* test was developed in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). A *Penn Central* taking occurs

Where, a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending upon a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.

*Machipongo*, 569 Pa. at 27, 799 A.2d at 765 (citing *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646).

11. As noted by the Township, the purpose of the review fee is "to protect the public from bearing [the] costs of professional consultant review of private subdivision and land development plans." Township Brief at 22.

657, 717 A.2d at 486. Here, Landowners' loss of the "residential development interest" in their land is the loss of only one of several uses. As such, the trial court erred in holding that this loss, a point in any case vigorously contested by the Township, constituted a regulatory taking.[12]

Landowners were, in fact, using their land for farming during the entire period of time in question. Further, there were other development opportunities available to Landowners that would have been less costly to review under the 1990 fee schedule. In *Nolen v. Newtown Township*, 854 A.2d 705 (Pa.Cmwlth.2004), this Court held that a two-year moratorium on development did not effect a taking because there were other uses available, including farming, that were not affected by the moratorium. Landowners could have pursued a different residential development plan, but they did not. At most, the 1990 fee schedule deprived Landowners of their ability to put their land to its most profitable use, but this is not a taking. *Miller*, 552 Pa. at 656–657, 717 A.2d at 486.

Further, we do not accept the premise that the 1990 fee schedule prohibited Landowners from pursuing their planned development. It only made it more costly. Assuming, *arguendo*, the fees were not reasonable, Landowners were required only to pay them into escrow. They were free to challenge each draw on that escrow account made by the Township for payment to engineers and other professional consultants engaged to review the preliminary plan. Any fees not used would have been returned to Landowners.

 Regardless of the substantive merits of Landowners' regulatory taking

claim, their petition was not ripe because they had not exhausted the statutory remedy provided by the MPC. This Court has explained that,

> a landowner, subjected to a temporary taking, can be entitled to compensation for the deprivation of the use of the property during the time period which precedes a decision invalidating the regulation.... However, until the landowner has pursued the remedies provided within the MPC to invalidate the ordinance, a compensation claim for the temporary taking is not ripe.

*Odhner v. Township of Woodward*, 143 Pa.Cmwlth. 450, 599 A.2d 276, 279 (1991) (citation omitted). This principle is well established. *Adams Outdoor Advertising, L.P. v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 481 n. 7 (Pa.Cmwlth.2006) (a landowner can petition for the appointment of a board of viewers only after exhausting its challenge to the zoning ordinance); *Millcreek Township v. N.E.A. Cross Co.*, 152 Pa.Cmwlth. 576, 620 A.2d 558 (1993) (administrative challenge to a zoning ordinance must be exhausted before petitioning for appointment of board of viewers); *Appeal of Doyle*, 142 Pa.Cmwlth. 672, 598 A.2d 352 (1991) (landowners must exhaust their remedies under the MPC before filing an action for inverse condemnation).

The MPC regulates the fees set by municipalities for the review of a land development plan. It provides standards for their establishment and protections to landowners who believe the fees are unwarranted or excessive.

Section 503(1) requires that review fees be reasonable and necessary. It states, in relevant part, as follows:

---

12. *Cf., Shaner v. Perry Township*, 775 A.2d 887 (Pa.Cmwlth.2001) (regulatory taking shown where township refused to issue landowner a permit to use land in a commercial district in any way whatsoever, including uses expressly permitted in the commercial district).

(1) ... *Review fees may include reasonable and necessary charges by the municipality's professional consultants for review and report thereon to the municipality.* Such review fees shall be based upon a schedule established by ordinance or resolution. Such review fees shall be reasonable and in accordance with the ordinary and customary charges for similar service in the community, but *in no event shall the fees exceed the rate or cost charged by the professional consultant for comparable services to the municipality for services* which are not reimbursed or otherwise imposed on applicants

53 P.S. § 10503(1) (emphasis added). Review fees may be paid all at once or over time, depending on the municipality's preference. Nevertheless, the municipality must inform the landowner of each payment it makes for professional services so that the landowner can object to a particular invoice that it believes to be excessive. Section 503(1)(i) of the MPC states, in relevant part, as follows:

(i) The governing body shall submit to the applicant an itemized bill showing work performed, identifying the person performing the services and the time and date spent for each task. *Nothing in this subparagraph shall prohibit interim itemized billing or municipal escrow or other security requirements. In the event the applicant disputes the amount of any such review fees, the applicant shall, no later than 45 days after the date of transmittal* of the bill to the applicant, notify the municipality and the municipality's professional consultant that such fees are disputed and shall explain the basis of their objections to the fees charged, in which case the municipality shall not delay or disapprove a subdivision or land develop-

ment application due to the applicant's dispute over fees. Failure of the applicant to dispute a bill within 45 days shall be a waiver of the applicant's right to arbitration of that bill under section 510(g).

53 P.S. § 10503(1)(i) (emphasis added). Where an agreement cannot be reached with the municipality's consultant on his fees, the landowner may take the dispute to arbitration. Section 503(1)(ii) states as follows:

(ii) *In the event that the municipality's professional consultant and the applicant cannot agree on the amount of review fees which are reasonable and necessary, then the applicant and the municipality* shall follow the procedure for dispute resolution set forth in section 510(g), provided that the arbitrator resolving such dispute shall be of the same profession or discipline as the professional consultant whose fees are being disputed.

53 P.S. § 10503(1)(ii) (emphasis added).

The dispute resolution procedure provides that the one who arbitrates the dispute shall be a person "of the same profession as the professional consultant whose fees are being challenged." Section 510(g)(2) of the MPC, 53 P.S. § 10510(g)(2). It then obligates that arbitrator to act promptly, stating as follows:

*The arbitrator* so appointed shall hear such evidence and review such documentation as the arbitrator in his or her sole opinion deems necessary and *shall render a decision no later than 50 days after the date of appointment.* Based on the decision of the arbitrator, the applicant or the professional consultant whose fees were challenged shall be required to pay any amounts necessary to implement the decision within 60 days. In the event the municipality has paid the professional consultant an amount in

excess of the amount determined to be reasonable and necessary, the professional consultant shall within 60 days reimburse the excess payment.

Section 510(g)(3) of the MPC, 53 P.S. § 10510(g)(3) (emphasis added).

 In sum, a landowner challenging a fee for review of a land development plan must notify the municipality that it disputes the fee paid to a professional within 45 days. Section 503(1)(i) of the MPC, 53 P.S. § 10503(1)(i). The landowner must then attempt to negotiate a reasonable fee with the municipality's professional consultant. Section 503(1)(ii) of the MPC, 53 P.S. § 10503(1)(ii). If negotiations fail, the landowner may have the matter resolved by an arbitrator who is of the same profession as the one whose fees are challenged. 53 P.S. § 10510(g)(2). Arbitration must be resolved promptly and excessive fees returned to the landowner.

Here, Landowners notified the Township that they disputed the fees imposed by the 1990 fee schedule and that they wanted to negotiate a reasonable fee. When the Township refused, Landowners sought a writ of mandamus, the subject of *Tobin*, 670 A.2d 761. This Court agreed that Section 503 of the MPC required the Township to negotiate reasonable review fees and remanded the matter to the trial

court for further proceedings. *Id.* at 765.[13] Upon remand, both Landowners and the Township made several moves toward a negotiated fee, but they failed to resolve their dispute. At no point, however, did Landowners, who invoked their Section 503 remedy, ever take the next step, *i.e.*, arbitration pursuant to Section 510(g) of the MPC. Accordingly, Landowners failed to exhaust their statutory remedies with respect to challenging the Township's 1990 fee schedule, and this failure precludes the filing of their petition for the appointment of a board of viewers to determine just compensation for the alleged temporary taking of their property caused by that fee schedule.[14] *Odhner*, 599 A.2d at 279.

For these reasons, we reverse the trial court's appointment of a board of viewers and grant the Township's preliminary objections to Landowners' petitions.[15]

### ORDER

AND NOW, this 31st day of July, 2008 the order of the Court of Common Pleas of Berks County dated October 31, 2007, in the above-captioned matter is hereby REVERSED.

---

13. Although this Court noted that the Township's review fees must be reasonable and in accordance with fees charged for similar services in the community, this Court did not determine whether in fact the Township's review fees were unreasonable. Indeed, the issue in Landowners' mandamus appeal was whether "[S]ection 503 of the MPC is applicable where a municipality collects review fees at the time of filing and, therefore, mandamus lies to compel the Township to discuss a reasonable review fee." *Tobin*, 670 A.2d at 763.

14. This Court notes that, notwithstanding the conclusion that there is no temporary taking, there is nothing to prevent Landowners from proceeding under the procedure set forth in

Sections 503 and 510 of the MPC to challenge the Township's applicable review fees. However, we again reiterate that the Township has discretion in the method of collecting review fees from applicants, *i.e.*, collecting them at the time of filing or seeking reimbursement after the review has been completed. *Tobin*, 670 A.2d at 764. Thus, should Landowners dispute any review fees in the future, it should submit the applicable fees and follow the statutory remedy set forth in the MPC to resolve any review fee disputes that follow.

15. In light of our disposition, we need not address the other issues raised by the Township.