**Doug CORTEAL, t/d/b/a Divito Park, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2003.
Decided April 9, 2003.

Wayne H. Port, Uniontown, for petitioner.

Andrew M. Rapach, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Doug Corteal, t/d/b/a Divito Park (Divito Park), petitions for review an order of the Secretary of the Department of Transportation (Department) adopting a proposed report of a Department of Transportation hearing officer revoking his advertising device permit because it violated the Outdoor Advertising Control Act of 1971(Act), Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. § 2718.101–2718.115,[1] and its applicable regulations,

---

1. The Act was intended to protect the Commonwealth's interest in receiving federal-aid

specifically, 67 Pa.Code § 445.4(b)(3)(iv),[2] prohibiting commercial advertising, and 67 Pa.Code § 445.6(e)(1),[3] prohibiting a deviation from information provided in the application.

Divito Park, a roller and ice skating rink as well as a dining room, is located at 101 Frankie Lane, Leisenring, in Fayette County. On June 18, 1999, Divito Park filed an Application for Advertising Device Permit (Permit) with the Department for the erection of a new sign on the property at the intersection of two state highways containing an electronically controlled message board displaying public service type announcements.[4] The appropriate zoning and ownership information was included in the application, as were the sign dimensions with language indicating that the contemplated sign was to be a "Digital Electronic Sign" that would be installed after the Permit was issued. In its approval letter, the Department advised Divito Park that the sign would be subsequently inspected by it to determine conformity to law. The sign was installed in August or September of 2000.

Shortly after the sign was erected, the Department began receiving inquiries regarding the sign, and it sent an employee to investigate. Based upon that investigation and because the sign advertised businesses other than Divito Park and also violated 67 Pa.Code § 445.4(b)(3)(iv) and 67 Pa.Code § 445.6(e)(1), the Department revoked the Permit by letter dated May 9, 2001, unless the violations were cured within 15 days. Divito Park filed a *pro se* appeal from the Department's determination and a hearing was held.

Before the hearing examiner, Terri L. Boyce (Boyce), the Department's outdoor advertising device manager at the time Divito Park submitted its Permit application, testified that Divito Park applied for an off-premise, 8 foot by 14 foot, single-faced sign that was to be illuminated by LED lamps and included an electronically controlled message board that would produce flashing, intermittent or moving lights. On the application, Divito Park had written that the sign would be used for, *inter alia*, "tributes to sponsors," which Boyce understood to mean that if an

---

funds and, at the same time, to further the national policy of highway beautification. *Patrick Media Group v. Department of Transportation*, 533 Pa. 188, 620 A.2d 1125 (1993). Its goal is to limit the proliferation of advertising signs along our highways. *Id.*, citing 36 P.S. § 2718.102 (relating to purposes of the Act). As provided for in the Act, 36 P.S. § 2718.106, the Department has promulgated regulations controlling outdoor advertising devices at 67 Pa.Code, Chapter 445.

2. 67 Pa.Code § 445.4(b)(3)(iv) provides:
   (b) *Maintenance.* A sign may not be erected or maintained inconsistent with the following criteria:
   \* \* \*
   (3) *Lighting of signs. The lighting of signs includes the following:*
   \* \* \*
   (iv) Signs which contain, include or are illuminated by a flashing, intermittent or moving light or lights shall be prohibited,

except those giving public service information such as time, date, temperature, weather or similar information.

3. 67 Pa.Code § 445.6(e)(1) provides:
   (e) *Revocation of permits.* Revocation of permits includes the following:
   (1) Permits shall be subject to revocation upon 15 days written notice for violation of the act or this chapter, or upon change of information provided in the application.

4. The application states that the sign will display messages including "events of the day, upcoming events, special announcements, tributes to sponsors, hockey scores and activities concurrent to our programs." (Reproduced Record at 57).

event was sponsored by an outside group at the facility, the message would so indicate. She further testified that "tributes to sponsors" would not include advertising by other commercial establishments, their business locations or the products offered for sale. The Department approved the Permit on the basis of the application.

David K. Bucan (Bucan), a roadway administrator with the Department, testified that he had received inquiries about the sign, and that he visited the site to investigate and make a video recording of the sign in operation.[5] Bucan testified that the sign was being operated as a commercial advertising device because it listed company names and their locations, as well as the prices of products and services. He also testified that the advertisements did not qualify as sponsorship because the advertisers were not sponsoring events held at Divito Park, but rather were advertising for their commercial businesses in the area.

Doug Corteal (Corteal), the owner of Divito Park, testified that after the Department's approval and prior to the installation of the sign, Divito Park solicited local business to sponsor the sign by selling advertising space.[6] Corteal testified that the 12 advertisers sponsored the sign and not necessarily activities at Divito Park. In addition, messages on the two "extra" screens had, at times, included political advertising. Corteal believed that once the Permit had been issued, the 12 advertisers had the right to put whatever they wanted on the sign, including company names, locations and prices of products and services. He admitted that only one message, besides the time/temperature message, contained public service information on the video recording. However, he stated that he had put other public service announcements on the sign in the past.

■ The hearing examiner issued a proposed report sustaining the revocation of the Permit. Divito Park filed exceptions to the proposed report, but they were dismissed by the Department, without opinion. Divito Park petitions for review of that decision with this Court.[7]

■ Divito Park first contends that the Department's interpretation of 67 Pa.

5. The video recording shows that the sequence of images on the sign runs for approximately two-and-one-half minutes and then repeats. The sign displays 14 different messages during the two-and-one-half minute sequence, most of which have two or three screen displays. The messages include one for time/temperature. The remaining 13 messages are advertisements for the following businesses: Laurel Business Institute, Bud Murphy's, Millers Yamaha Ducati, Brooks Camper Sales, Home Warehouse, Action Oil, Divito Park, Davies Ford, Kathyrn's Jewelry, Kentucky Fried Chicken, Saloom Department Store, Frosty's Subs and Ice Cream, and Pepsi Notes, which encourages people to save "Pepsi Notes" to assist local schools in obtaining band instruments.

6. By letter dated May 10, 2000, Divito Park sought 12 advertisers to pay $5,000 each for the exclusive right to advertise on the sign for five years. In that letter, Divito Park advised prospective advertisers that the sign would have 14 total screens, one for use by each advertiser and two screens to sell to noncompetitive advertisers; that each advertiser had the right to choose its own content and could change it as desired; that the advertisers had the right to approve the additional partners to avoid conflicts; and that the advertisers retained the right to sell their position on the sign to third parties if Divito Park failed to exercise its option to repurchase the space. Each business signed an Advertising Agreement allowing it to advertise on the sign.

7. This Court's scope of review on appeal from an administrative agency decision is whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Mike's Sign Company v. Department of Transportation,* 164 Pa.Cmwlth. 292, 642 A.2d 634 (1994).

Code § 445.4(b)(3)(iv) unreasonably and arbitrarily differentiates between incidental advertising through sponsorship of public service announcements and direct advertising because it did not define those terms. What Divito Park is contending, without saying so, is that the Commonwealth and the Department have no rational basis for treating those two classes differently. Classification along non-suspect lines is permissible if there is a rational basis for doing so. *Heller v. Doe by Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Moreover, the state need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negate any reasonably conceivable state of facts that could provide a rational basis for the classification. *FCC v. Beach Communications, Incorporated,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). In this case, not surprisingly, because it presumes that the Department has the burden to establish a rational basis for the distinction, Divito Park failed to establish that there are no reasonably conceivable state of facts that could provide a rational basis for distinguishing between public service announcements and commercial advertising. In any event, there is a valid distinction between incidental and direct advertising signs. As stated, *supra,* the intent of the legislature in passing the Act was, in part, to limit advertising along roadways. *Patrick,* 533 Pa. at 193, 620 A.2d at 1128; 36 P.S. § 2718.102.[8] Sponsors of public service announcements are not paid ads, but instead, serve the purpose of informing the public, while advertisers do so solely for their own profit. Because Divito Park's sign contains advertising, the Department did not err in

adopting the proposed report revoking its Permit.

 Divito Park also argues that Penn-Dot should be estopped from revoking the Permit for deviating from information provided in the application because the application mentioned that it was going to have "tributes to sponsors" on the sign, and it relied on the Department's approval to erect the sign and to obtain investors. On its Permit application, Divito Park was specifically advised of the requirements imposed by 67 Pa.Code § 445.4(b)(3)(iv), and the Permit was approved on the Department's understanding that the sign would display public service information and tributes to sponsors of that information. The Department approved a sign that would allow tributes to sponsors, which it reasonably understood to mean recognition of those people and businesses sponsoring community events at Divito Park. Because Divito Park failed to present any evidence demonstrating misleading words or conduct on the part of the Department and also displayed commercial advertisers on its sign, the Department did not err in revoking Divito Park's Permit for a change in information as provided in the application.

Accordingly, the order of the Department is affirmed.

### ORDER

AND NOW, this *9th* day of *April,* 2003, the order of the Secretary of the Department of Transportation, No. 013 A.D.2001, dated April 3, 2002, is affirmed.

---

8. 36 P.S. § 2718.102 states, in relevant part: [F]or the purpose of assuring the reasonable, orderly and effective display of outdoor advertising ... it is hereby declared to be in the public interest to control the erection and maintenance of outdoor advertising devices in areas adjacent to the interstate and primary systems within this Commonwealth.