**ADAMS OUTDOOR ADVERTISING, LP., Appellant**

v.

**ZONING HEARING BOARD OF SMITHFIELD TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2006.

Decided Oct. 18, 2006.

---

James V. Fareri, Stroudsburg, for appellant.

Jennifer Harlacher Sibum, Stroudsburg, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this zoning appeal, we are asked whether the Court of Common Pleas of Monroe County (trial court) erred in affirming a decision of the Zoning Hearing Board of Smithfield Township (ZHB) that required Adams Outdoor Advertising, L.P. (Applicant) to remove two off-premises advertising billboards it leases. Applicant raises several validity challenges to a zoning ordinance provision that requires removal of commercial advertising signs on property where land development is proposed. Because the ZHB and the trial court properly rejected these challenges, we affirm.

Gerald Gay (Landowner) owns a 7.7–acre tract of land at the intersection of State Route 209 and Business Route 209 in Marshalls Creek, Smithfield Township, Monroe County (Subject Property). The Subject Property lies in the Township's C–1 Commercial Zoning District.

At present, the only structures on the Subject Property are two off-premises advertising billboards[1] that Applicant leases

---

1. The Smithfield Township Zoning Ordinance (Ordinance) defines "billboards and off-prem-

from Landowner. In October 2001, the parties executed their first lease for the billboards for a five-year term; a second five-year lease was executed in June 2004.

In 2000, prior to execution of the first lease, Landowner submitted a preliminary land development plan to the local governing body in order to construct an office complex on the Subject Property. The local governing body approved the preliminary plan with conditions. The plan is currently pending before the local governing body while Landowner attempts to obtain a highway occupancy permit from the Pennsylvania Department of Transportation.

In May 2004, Landowner applied for a zoning permit to perform "site alteration" work on the Subject Property in order to "ESTABLISH A USE." Reproduced Record (R.R.) at 3a. The Township's zoning officer issued the permit subject to the condition that the two off-premises advertising billboards leased by Applicant be removed within 30 days as required by Section 504(13)(H) of the Ordinance. That Section states:

> 13. Commercial Advertising Signs. Commercial advertising signs,[2] outdoor advertising structures, or billboards which advertise products or businesses not connected with the site on which they are located shall be permitted and regulated as separate uses on undeveloped property in the commercial and industrial districts, except as otherwise provided under the establishment of sign plazas.

> H. *Where an existing commercial advertising sign exists on a property proposing land development or alterations or enlargement of an existing use, said sign shall be removed.*

*Id.* (Emphasis added.)

Applicant appealed the zoning officer's issuance of the permit to the ZHB, challenging the condition that required removal of the billboards. It asserted:

> [Applicant] seeks to continue use of [the] existing billboard [sic] until such time, if ever, as [L]andowner receives a certificate of occupancy for a proposed land development. [Applicant] has existing contract rights to maintain the billboard [sic] and should not be compelled to remove the billboard [sic] until such time, if ever, as [L]andowner actually completes construction on the property in question.

Certified Record, Item No. 12. Applicant sought an interpretation of the Ordinance in its favor by the ZHB or, in the alternative, a variance, to continue its use of the billboards until Landowner completed construction on the Subject Property. *Id.* A hearing ensued before the ZHB.

At the hearing, counsel for Applicant asserted the issue before the ZHB centered on an interpretation of Section 504(13)(H) of the Ordinance. Applicant argued the Township could not require removal of the billboards until Landowner received a certificate of occupancy pursuant to a land development plan approved by the Township. Alternatively, Applicant maintained, based on its lease with

ises signs" as:
a sign which directs attention to a business, commodity, service, entertainment or attraction sold, offered, or existing elsewhere than upon the same lot where such sign is displayed. The term 'off-premises sign' shall include an outdoor advertising sign (billboard) on which space is leased or rented by the owner thereof to others for the

purpose of conveying a commercial or non-commercial message.
Section 1002 of the Ordinance.

2. The Ordinance defines commercial advertising signs by reference to "billboards and off-premises signs." *See* Section 1002 of the Ordinance.

Landowner, it had a contractual right to maintain the billboards until Landowner completed construction and received a certificate of occupancy.

In support of its appeal, Applicant presented the testimony of David Massie, one of its employees (Applicant's Representative). Applicant's Representative testified Applicant entered into a five-year lease with Landowner to rent the billboards in June 2004. He testified Applicant wished to maintain its use of the billboards until Landowner completed construction of his proposed use and received a certificate of occupancy. Applicant's Representative also testified, in another case involving a different parcel and a different billboard, the Township required Applicant to remove a billboard when the landowner submitted a land development plan, but the proposed development never occurred. As a result, he testified, Applicant lost its right to use the billboard. He acknowledged, however, Applicant did not submit a request to re-install the sign when the proposed development did not occur.

The Township Zoning Officer testified Landowner submitted a permit application in May 2004 seeking to perform site alteration work on the Subject Property. The Zoning Officer indicated he issued the permit "based upon alteration of the [Subject Property] consistent with the land development [plan] that [Landowner] previously submitted to the Township." ZHB Op. at 4.

Landowner testified, at present, he is performing only excavation work on the Subject Property and he has no current intention of constructing the office complex proposed in his preliminary land development plan. Landowner further testified that the billboards he leases to Applicant do not interfere with his excavation work on the Subject Property.

Ultimately, the ZHB issued a decision in which it rejected Applicant's appeal of the permit condition that required removal of the billboards. The ZHB first determined the clear language of Section 504(13)(H) of the Ordinance requires removal of an existing commercial sign on a property "proposing" land development. The ZHB further determined Landowner "proposed" land development here as evidenced by the fact he filed a land development plan, received preliminary approval for the plan, obtained a site alteration permit to begin developing the Subject Property consistent with the plan, and began excavation on the Subject Property that appeared consistent with the land development plan. Thus, the ZHB stated, "it [is] disingenuous of [Landowner] [to claim] that he now has no intention to construct any buildings on the [Subject Property]." ZHB Op. at 10.

Additionally, the ZHB rejected Applicant's argument that its lease with Landowner provided a contractual right that allowed it to use the billboards without regard to the provisions of the Ordinance. Specifically, the ZHB explained, "a lease or contract between private individuals cannot supercede the regulations of the [Ordinance]." Id. at 12.

Finally, the ZHB denied Applicant's variance request because Applicant did not prove unnecessary hardship would result if the variance was denied or that, because of any such hardship, the Subject Property could not be developed in conformity with the Ordinance.

Applicant appealed to the trial court, asserting the ZHB erred in applying Section 504(13)(H) of the Ordinance in a manner that results in a taking of its property without just compensation, infringes on its right to free speech, and selectively discriminates against properties on which off-premises advertising signs are located. Applicant also argued the ZHB erred in

applying Section 504(13)(H) so as to require removal of the billboards where only excavation is performed on a property. Finally, Applicant asserted the ZHB erred in failing to interpret the ambiguous term "proposing" in Section 504(13)(H) in a manner most favorable to it.

Without accepting additional evidence, the trial court rejected these arguments and affirmed the ZHB. This appeal by Applicant followed.

■ On appeal,[3] Applicant raises five issues. It asserts Section 504(13)(H) of the Ordinance: constitutes an unlawful attempt to amortize its lawfully existing advertising billboards; violates its right to equal protection; improperly restricts commercial speech; and, results in an unlawful taking of its property without just compensation. In addition, Applicant argues the term "proposing" in Section 504(13)(H) is ambiguous and, as a result, it must be interpreted in Applicant's favor.

### I.

■ Relying on *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Township of Moon*, 526 Pa. 186, 584 A.2d 1372 (1991), Applicant first argues Section 504(13)(H) of the Ordinance, which requires removal of lawfully existing outdoor advertising signs, constitutes an illegal amortization provision. It asserts amortization provisions that require discontinuance of lawful nonconforming uses violate the Pennsylvania Constitution because such provisions result in a taking of one's property without just compensation.

Contrary to Applicant's assertions, Section 504(13)(H) of the Ordinance is not an amortization provision. "Stated in its simplest terms, amortization contemplates the compulsory termination of *a nonconforming use at the expiration of a specified period of time, which period is equal to the useful economic life of the nonconformity.*" *Nat'l Adver. Co. v. County of Monterey*, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33, 37 n. 3 (1970) (Sullivan, J., dissenting) (emphasis added) (citing Katarincic, *Elimination of Non–Conforming Uses, Buildings and Structures by Amortization–Concept Versus Law*, 2 Duquesne L.Rev. 1. (1963)); *see generally* Annotation, *Validity of Provisions for Amortization of Nonconforming Uses*, 8 A.L.R. 5th 391 (2005). As further explained by the highest court of New York:

Most often, elimination [of nonconforming uses] has been effected by establishing amortization periods, at the conclusion of which the nonconforming use must end. As commentators have noted, the term "amortization period" is somewhat misleading. "Amortization" properly refers to a liquidation, but in [the] context [of nonconforming uses] the owner is not required to take any particular financial step. "Amortization period" simply designates a period of time granted to owners of nonconforming uses during which they may phase out their operations as they see fit and make other arrangements. It is, in effect, a grace period, putting owners on fair notice of the law and giving them a fair opportunity to recoup their investment.

*Village of Valatie v. Smith*, 83 N.Y.2d 396, 610 N.Y.S.2d 941, 632 N.E.2d 1264, 1266 (1994) (citations omitted).

Section 504(13)(H) of the Ordinance is not an amortization provision. More spe-

---

**3.** Our review in zoning cases where the trial court does not take additional evidence is limited to determining whether the ZHB committed an error of law or abused its discretion. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa.Cmwlth.), *pet. for allowance of appeal denied*, 585 Pa. 692, 887 A.2d 1243 (2005).

cifically, that Section does not require termination of a nonconforming use within a period established by the Township. Rather, that Section allows off-premises signs to remain on a parcel as long as the owner of that parcel wishes. Indeed, Section 504(13)(H) only requires removal of off-premises signs "on a property proposing land development or alterations or enlargement of an existing use." *Id.* Thus, it is a property owner's action in deciding to pursue development on its land that requires removal of an off-premises advertising sign rather than the Township requiring removal within a specified period. Indeed, as aptly stated by the respected trial court, "The removal of the billboards is not an immediate, necessary or unavoidable consequence of Section 504[ (13)(H)]." Tr. Ct., Slip Op. at 11.

In sum, we conclude the Ordinance provision in question is not an amortization provision because the discontinuance of the billboard use is triggered by choice and action of the landowner, not by municipal action.[4]

Thus, *Moon*, the primary case relied on by Applicant, is inapplicable. There, a township passed an amendment to its zoning ordinance requiring owners of "adult commercial enterprises," who had valid preexisting nonconforming uses, to amortize and discontinue their nonconforming uses within 90 days after the amendment's effective date. Our Supreme Court held the amendment was invalid, stating "the amortization and discontinuance of a lawful pre-existing nonconforming use is *per se* confiscatory and violative of the Pennsylvania Constitution" as a taking of private property without just compensation. *Id.* at 195, 584 A.2d at 1376 (citation omitted).

*Moon* is inapposite here. More specifically, unlike the amortization provision in that case, which granted business owners a 90–day "grace period" to cease operation or comply with the ordinance, Section 504(13)(H) does not require removal of off-premises billboards within a specific time period set forth strictly by the Township. Further, unlike the amortization provision in *Moon*, Section 504(13)(H) of the Ordinance does not prohibit outdoor advertising billboards; rather, it requires removal of the billboards on property where land development or alterations or enlargement of an existing use is proposed. Thus, it is Landowner's voluntary decision to pursue land development on the Subject Property that necessitates removal of the billboards rather than any action by the Township.

Further, Applicant's citation to *Keystone Outdoor Advertising v. Department of Transportation*, 687 A.2d 47 (Pa. Cmwlth.1996) as additional support for its position that Section 504(13)(H) constitutes an unlawful amortization provision is also misplaced. In that case, we held the right to maintain a nonconforming sign was abandoned when a sign, damaged by a storm, was replaced with a new sign constructed with different materials. In short, *Keystone Outdoor* did not concern the issue of amortization; rather, it concerned abandonment of a nonconforming use. Indeed, we expressly stated, "[u]nlike *Moon*, in this case a cessation or abandonment of use, *rather than amortization*, is involved. . . . [B]ecause no amortization provision is involved in the present case but only the cessation of a use, the

---

4. Further, as suggested in the above-cited authority, the issue of amortization only arises in the context of nonconforming uses. We are aware of no case law discussing an amortization provision in the context of a permit- ted use. Here, there is no indication Applicant's billboards are nonconforming uses. This fact further brings into question Applicant's reliance on authority discussing amortization of nonconforming uses.

holding in *Moon* simply has no applicability whatsoever." *Id.* at 51–52 (emphasis added) (citation and quotation omitted). Thus, *Keystone Outdoor* does not support Applicant's position.

Finally, although Applicant briefly asserts it is entitled to a variance to maintain its billboards until Landowner completes construction of the proposed office complex and receives a certificate of occupancy, it did not raise this issue in its Statement of Matters Complained of on Appeal. *See* R.R. at 54a–55a. Therefore, this issue is waived. *Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775 (2005); *Commonwealth v. Schofield,* 585 Pa. 389, 888 A.2d 771 (2005); *Commonwealth v. Holtzapfel,* 895 A.2d 1284 (Pa.Cmwlth.2006).[5]

## II.

Applicant next argues Section 504(13)(H) of the Ordinance violates its right to equal protection because it discriminatorily singles out off-premises signs as a use prohibited on property where land development is proposed, while not requiring removal of other uses (including on-premises signage) on similarly situated property. Applicant contends Section 504(13)(H) is arbitrary, unreasonable and discriminatory, while not aimed at protecting the general welfare of the community.

■■■ A zoning ordinance is presumptively constitutional. *Baker v. U. Southampton Twp. Zoning Hearing Bd.,* 830 A.2d 600 (Pa.Cmwlth.2003). Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish the provisions of the ordinance are arbitrary and unreasonable. *Id.* A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court. *Id.* An ordinance will be found unreasonable and not substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary. *Id.*

■■■ Billboards are regarded as a legitimate business use of property in Pennsylvania and may be regulated but not excluded by a local zoning ordinance. *J.B. Steven, Inc. v. Bd. of Comm'rs of Wilkins Twp.,* 654 A.2d 135 (Pa.Cmwlth.1995). A municipality has the power to regulate signs, billboards or other advertising media provided such regulation is not unreasonable, arbitrary, or discriminatory, and there is a reasonable relationship to the safety, morals, health, or general welfare of the community. *Borough of Dickson City v. Patrick Outdoor Media, Inc.,* 90 Pa.Cmwlth. 628, 496 A.2d 427 (1985); *see also Atl. Ref. & Mktg. Corp. v. Bd. of Comm'rs of York Twp.,* 147 Pa.Cmwlth. 418, 608 A.2d 592 (1992). Further,

The zoning authority can establish rigorous objective standards in its ordinance for size, *placement,* materials, or coloration of signs to insure that their offen-

---

5. Even if not waived, however, this argument fails. In rejecting Applicant's variance request, the ZHB determined:

[Applicant] presented no evidence that the property contains unique physical circumstances or conditions which cause an unnecessary hardship or that because of any physical circumstances or condition[s] that there is no possibility that the property can be developed in strict conformity with [the Ordinance] thereby necessitating the issuance of a variance to enable the reasonable use of the property. Rather, the testimony indicates that the property can be utilized in conformity with the [Ordinance] in light of the preliminary approval granted to [Landowner's] land development plan....

ZHB Op. at 11–12. Applicant does not dispute these determinations. Further, based upon our review of the record, we discern no error in the ZHB's denial of the variance.

siveness is minimized as much as possible. *Signage ordinances utilizing such objective standards shall be upheld where they are reasonably related to the clearly permissible objectives of maintaining the aesthetics of an area and fostering public safety through preventing the distraction of passing motorists.* Atl. Ref. & Mktg., 608 A.2d at 594 (emphasis added) (citation omitted).

▬▬▬ In addition, as Applicant acknowledges, classification along non-suspect lines is permissible if there is a rational basis for doing so. *Corteal v. Dep't of Transp.*, 821 A.2d 173 (Pa.Cmwlth. 2003).[6] Moreover, a legislative body need not articulate its reasoning at the moment a particular decision is made. *Id.* Rather, the burden is on the challenger to negate any reasonably conceivable state of facts that could provide a rational basis for the classification. *Id.*

▬▬▬ As noted, Section 504(13)(H) of the Ordinance requires removal of off-premises advertising billboards on property where land development or alterations or enlargement of an existing use is proposed. Applicant asserts the Township did not establish a rational basis for requiring removal of off-premises signs when land development is proposed, but not requiring removal of other uses in a similar situation. What this argument overlooks,

however, is that it was *Applicant's burden* to negate any reasonably conceivable state of facts that could provide a rational basis for such classification, *Corteal,* and Applicant did not do so here. Indeed, before the ZHB, Applicant presented *no evidence or argument* to support its current assertion that the Ordinance violates its right to equal protection by treating off-premises signage differently from other uses.

In any event, there is a valid basis for the Township's distinction between off-premises advertising signs and other uses. More specifically, pursuant to Section 504 of the Ordinance:

The purpose of this Section is to promote and protect the public health, welfare and safety by regulating existing and proposed outdoor advertising and outdoor signs of all types. It also protects property values, creates a more attractive economic and business climate, enhances and protects the physical appearance of the community, preserves the scenic and natural beauty of designated areas and provides a more enjoyable and pleasing community. *It is further intended hereby to reduce sign or advertising distractions and obstructions that may contribute to traffic accidents, reduce hazards that may be caused by signs overhanging or projecting over public rights of way, provide*

---

**6.** "Absent an invidious discrimination against a suspect class or the burdening of a fundamental right ... a legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Twp. of S. Whitehall v. Karoly,* 891 A.2d 780, 783 (Pa. Cmwlth.) (citation omitted), *pet. for allowance of appeal denied,* 588 Pa. 787, 906 A.2d 546 (2006) "It is well established that, under the First Amendment to the United States Constitution, commercial speech such as advertising enjoys limited constitutional protection and can be regulated in a more stringent manner than non-commercial speech." *Common-*

*wealth, Bureau of Occupational & Prof'l Affairs v. State Bd. of Physical Therapy,* 556 Pa. 268, 274, 728 A.2d 340, 343 (1999) (citing *U.S. v. Edge Broad. Co.,* 509 U.S. 418, 426, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993)). Further, where, as here, a regulation is content neutral, as opposed to content-based, it is appropriately analyzed under the rational basis test. *See, e.g., Outdoor Media Dimensions, Inc. v. State,* 150 Or.App. 106, 945 P.2d 614 (1997), *aff'd,* 331 Or. 634, 20 P.3d 180 (2001) (citing *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)); *Corteal; Atl. Ref. Mktg.*

*more open space, and curb the deterioration of natural beauty and community environment.*

Section 504 of the Ordinance (emphasis added). The goals the Ordinance seeks to further, traffic safety and the esthetics of the area, are substantial governmental goals that provide a rational basis for the Ordinance's regulation of off-premises signage. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Corteal; Atl. Ref. & Mktg.*

Moreover, to the extent Applicant suggests that the Ordinance creates an impermissible distinction between on-site and off-site advertising signs, many courts, including the United States Supreme Court, hold there is nothing novel or constitutionally infirm about the use of the on-site/off-site distinction. *See Metromedia; Clear Channel Outdoor, Inc., A Delaware Corp. v. City of Los Angeles,* 340 F.3d 810 (9th Cir.2003). In *Metromedia,* a landmark United States Supreme Court decision on the regulation of outdoor advertising, a plurality of the Court found it permissible to distinguish between on-site and off-site commercial signs, explaining:

> [W]hether onsite advertising is permitted or not, the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics. This is not altered by the fact that the ordinance is underinclusive because it permits onsite advertising .... [T]he city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising. San Diego has obviously chosen to value one kind of commercial speech—onsite advertising—more than another kind of commercial speech—offsite advertising. The ordinance reflects a decision by the city that the former interest, but not the

latter, is stronger than the city's interests in traffic safety and esthetics .... As we see it, the city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere.

*Metromedia,* 453 U.S. at 511–12, 101 S.Ct. 2882 (citations omitted). Thus, the Township's decision to require removal of off-site, as opposed to on-site advertising signs, does not render Section 504(13)(H) invalid. *Id.*

### III.

■ Applicant further contends 504(13)(H) of the Ordinance constitutes an impermissible regulation of protected commercial speech. It asserts Section 504(13)(H) must be analyzed in light of the test set forth by the United States Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

In *Atlantic Refining & Marketing,* we rejected a similar argument, explaining:

> [The appellant] further raises a constitutional issue of First Amendment protection given to commercial speech, citing [*Central Hudson Gas*]. However, *Central Hudson Gas* and its progeny are not helpful in that they address ordinances *in which there was either a total ban imposed on commercial speech or a content-based restriction, neither of which is present here.* See [*Metromedia*]. Therefore, no further analysis of this issue is necessary.

*Id.* at 595, n. 5, 100 S.Ct. 2343 (emphasis added).

Here, as aptly noted by the trial court:

(1) Section 504 mandates the removal of commercial signs *regardless of [the] subject matter of the signage;* and (2) Section 504 *does not create a total ban on commercial signs;* Section 504 only requires the removal of commercial signs when there is a proposed land development or alteration or enlargement of an existing use.

Tr. Ct., Slip Op. at 10 (emphasis added). Consequently, because the Ordinance does not attempt to regulate signage based on content or effectuate a total ban on commercial speech, application of *Central Hudson Gas* is unnecessary.

## IV.

Applicant also contends, as applied, Section 504(13)(H) of the Ordinance results in a *de facto* taking of its billboards for which it is entitled to just compensation. It maintains, as a result of the application of Section 504(13)(H), it is substantially deprived of all beneficial use and enjoyment of its signs.

■ In *Visco v. Commonwealth of Pennsylvania, Department of Transportation,* 92 Pa.Cmwlth. 102, 498 A.2d 984 (1985), this Court succinctly described a *de facto* taking as:

[A] situation where a governmental agency ... although clothed with the power of eminent domain, but prior to its formal exercise, engaged in conduct which the property owner contends impinged upon the beneficial use of his property and resulted in a diminution in value, for which he seeks compensation. A *de facto* taking is not the physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property.

*Id.* at 985.

■ "This substantial deprivation [of property] must be occasioned by the actions of the entity clothed with the power of eminent domain, be caused as a result of the exercise of that power, and the damages sustained by the condemnee must be an immediate, necessary and unavoidable consequence of such exercise." *Darlington v. County of Chester,* 147 Pa. Cmwlth. 177, 607 A.2d 315, 318 (1992). The burden of proving a *de facto* taking is a heavy one, *Miller & Son Paving, Inc. v. Plumstead Township,* 552 Pa. 652, 717 A.2d 483 (1998), and each case turns on its unique facts. *Darlington.*

■ Further, "a taking does not result merely because a regulation may deprive the owner of the most profitable use of his property." *Miller & Son Paving,* 552 Pa. at 656, 717 A.2d at 486 (1998). "Otherwise, all zoning regulations could be categorized as 'takings' in the sense that the owner is not completely free to use his property as he chooses." *Id.* at 656–57, 717 A.2d at 486.

■ Here, Applicant did not establish a *de facto* taking occurred by application of the Ordinance or as a result of the Township's actions. To the contrary, Applicant's right to use the billboards ceased when Landowner actively pursued land development on the Subject Property.

More particularly, although Applicant contends it must be compensated by the Township for the loss of its lease based on the condition that it remove its billboards, the Township's actions have not altered Applicant's lease. Applicant's property interest consists of a lease with Landowner, whose land supports its billboards. While a leasehold interest is considered a compensable property right in Pennsylvania, *see, e.g., Graham Realty Co. v. Commonwealth of Pennsylvania, Department of Transportation,* 67 Pa.Cmwlth. 318, 447

A.2d 342 (1982), this interest is in no way altered by Section 504(13)(H) of the Ordinance. That Section allows the billboards to remain *as long as Landowner wishes.* Section 504(13)(H) therefore does not alter the contractual rights or duties between lessor and lessee. So long as Applicant has an enforceable lease, it retains the right to whatever remedies the law provides in the event of a breach. Thus, Section 504(13)(H) of the Ordinance does not deprive Applicant of any property interest. *See Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604 (9th Cir.1993) (cities' sign codes requiring removal of billboards when property is developed did not effect taking of leasehold interest since codes allowed billboards to remain as long as landowner wished and lessees had state-law breach of contract remedies). *Accord St. Louis Park Post No. 5632 v. City of St. Louis Park,* 687 N.W.2d 405 (Minn.Ct. App.2004); *Naegele Outdoor Advertising Co. of Minneapolis v. City of Lakeville,* 532 N.W.2d 249 (Minn.Ct.App.1995).[7]

Nevertheless, Applicant maintains application of Section 504(13)(H) of the Ordinance effects a taking of its property because that provision is not necessary to effectuate any asserted Township interest. Essentially, Applicant argues there is no "nexus" between Section 504(13)(H) and the Township's interests.

Applicant further asserts requiring removal of signage upon the mere proposal of land development is not necessary to effectuate the Township's interest in relegating off-premises signage to undeveloped property. It asserts requiring removal when land development is proposed is premature as such development may never occur and Applicant may be unjustly deprived of the lawful use of its property. Applicant argues it should be permitted to maintain its billboards until Landowner completes construction of its proposed use and receives a certificate of occupancy.

With regard to the "nexus" requirement alluded to by Applicant, in *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), the United States Supreme Court held that a regulatory taking occurs where there is no "nexus" or connection between the effect of a regulation and the governmental interest sought to be achieved as the regulation does not advance the state's interest.[8] As explained by the Ninth Circuit:

---

7. Moreover, if Applicant truly believes a *de facto* taking occurred, after exhausting its challenge to the validity of Section 504(13)(H) of the Ordinance, its appropriate remedy would be to file a petition for the appointment of viewers under the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903. *See, e.g., Millcreek Twp. v. N.E.A. Cross Co.,* 152 Pa.Cmwlth. 576, 620 A.2d 558 (1993) (after exhausting administrative challenge to validity of zoning ordinance, as required, party could file petition for appointment of board of viewers under Section 502(e) of the Code, 26 P.S. § 1–502(e)). *Accord Odhner v. Twp. of Woodward,* 143 Pa.Cmwlth. 450, 599 A.2d 276, 278 (1991) (holding "until the landowner has pursued the remedies provided within the [Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202] to invalidate the ordinance, a compensation claim for the temporary taking is not ripe"); *Appeal of Doyle,* 142 Pa.Cmwlth. 672, 598 A.2d 352 (1991) (appellants must first exhaust their remedies under the MPC before they can bring an action for inverse condemnation under the Code); *McClimans v. Bd. of Supervisors of Shenango Twp.,* 107 Pa.Cmwlth. 542, 529 A.2d 562, 570 n. 5 (1987) (if an ordinance is found to effectuate an unconstitutional taking, "it may well be that [a]ppellants then will have to proceed under the provisions of the [Code] ... to obtain just compensation for the taking inasmuch as there is no provision in the MPC for the award of monetary damages").

8. When considering takings issues, the Pennsylvania Supreme Court consistently relies upon the decisions of the United States Su-

A zoning law effects a taking if (1) it does not substantially advance a legitimate governmental interest; or (2) it denies an owner economically viable use of his land. While no precise formula reveals when property has been taken, the determination "necessarily requires a weighing of private and public interests." ... [The appellants] focus on the so-called "nexus requirement" enunciated in [*Nollan*]. The necessity for a nexus is a subpart of the requirement that a regulation "substantially advance" a legitimate state interest. The Court held in *Nollan* that if there is no nexus or connection between the effect of the regulation and the governmental interest sought to be achieved, the regulation does not advance the state's interest.

In *Nollan*, the state's asserted interest was maintaining visual access to the beach for those on the street. The regulation required the Nollans to grant a lateral easement across the beachfront behind their house. As the Court observed, that easement obviously would not help those on the street see the beach. There thus was no "nexus" between the regulation and the goals sought to be achieved by the city.

*City of Mesa*, 997 F.2d at 615–16 (citations omitted).

Contrary to Applicant's assertions, here there is a clear nexus between Section 504(13)(H) and the Township's interests. Section 504(13)(H) requires the removal of billboards whenever the land on which they stand is proposed to be developed. The Township's interest in promoting traffic safety and esthetics by reducing the proliferation of billboards is directly advanced by this provision, as the number of billboards is reduced by its operation. *See*

*City of Mesa* (cities' vacant-lot provisions requiring removal of billboards when land supporting them is developed is within cities' interests in restricting billboards). Thus, Section 504(13)(H) substantially advances the Township's legitimate interests. *Metromedia.* Accord *Taxpayers for Vincent.*

Similarly, we reject Applicant's challenge to the early onset of billboard removal. Initially, we note that in its very brief presentation to the ZHB Applicant did not press its timing challenge with such clarity as to put the ZHB on fair notice that this was a separate issue. Not surprisingly, therefore, the ZHB did not address the issue. We need not dispose of the challenge on the basis of waiver, however, because Applicant failed to negate any conceivable connection between the timing of billboard removal and a legitimate governmental interest.

In particular, Section 504(13)(H) acts to inhibit more than one principal use of property. This is a goal commonly sought by zoning ordinances so as to promote orderly and harmonious development. *See generally* 1 Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE, § 4.3 (2001 ed. & 2004 supp.) ("Multiple Use," "Principal Use Requirements"). Under this provision, where an off-premises advertising sign is an existing permitted principal use, but a new use is proposed, the advertising sign must be removed.

To define the transition from one principal use to the next, the Township selected a discrete point in time: when land development is proposed. The Township applies this provision to approved proposals which are actively pursued and which can be objectively verified. Selection of a

preme Court. *Machipongo Land & Coal Co., Inc. v. Commonwealth of Pennsylvania, Dep't. of Envtl. Prot.*, 569 Pa. 3, 24, 799 A.2d 751,

763 n. 7, *cert. denied*, 537 U.S. 1002, 123 S.Ct. 486, 154 L.Ed.2d 397 (2002).

point early in the transition between principal uses guards against the overlapping of principal uses. As with other manifestations of multiple principal uses on a property, the overlapping of principal uses would be contrary to the goal of orderly and harmonious development.

Considering the foregoing, we conceive of a connection between the timing of billboard removal and a governmental goal. Accordingly, we reject Applicant's claim that no nexus exists between Section 504(13)(H) and the Township's interests.

## V.

As a final issue, Applicant maintains, Section 603.1 of the MPC [9] mandates that where doubt exists as to the interpretation of a zoning ordinance that attempts to restrict the use of property, the language shall be interpreted in favor of a property owner. Applicant asserts here the term "proposing" in Section 504(13)(H) is ambiguous, and, as a result, it should be interpreted in Applicant's favor so as to allow commercial signage to remain on a property until the property is actually used in manner inconsistent with the signage.

 A zoning hearing board is the entity responsible for the interpretation and application of its zoning ordinance, and its interpretation of its own ordinance is entitled to great deference from a reviewing court. *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55 (Pa. Cmwlth.1999). The basis for the judicial deference is the knowledge and expertise a zoning hearing board possesses to interpret the ordinance it is charged with administering. *Id.*

 Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See Bailey v. Zoning Bd. of Adjustment of City of Phila.*, 569 Pa. 147, 801 A.2d 492 (2002). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa.C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage). An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267 (3d Cir.1992).

 Tribunals confronted with interpreting undefined terms in an ordinance are guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning. *Diocese of Altoona–Johnstown v. Zoning Hearing Bd. of Borough of State College*, 899 A.2d 399 (Pa.Cmwlth.2006). Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.*, 808 A.2d 1014 (Pa.Cmwlth. 2002).

 Section 603.1 of the MPC, relied on by Applicant, provides:

In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the prop-

9. Section 603.1 was added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10603.1.

erty, the language shall be interpreted, *where doubt exists as to the intended meaning of the language written and enacted by the governing body,* in favor of the property owner and against any implied extension of the restriction.

53 P.S. § 10603.1 (emphasis added). Thus, where doubt exists, the language of a zoning ordinance should be interpreted, in favor of the landowner and against any implied extension of restrictions on the use of one's property. Of particular import here, "[h]owever, this rule of construction is inapplicable where ... the words of the zoning ordinance are clear and free from any ambiguity." *Isaacs v. Wilkes–Barre City Zoning Hearing Bd.,* 148 Pa.Cmwlth. 578, 612 A.2d 559, 561 (1992); *see also City of Hope v. Sadsbury Twp. Zoning Hearing Bd.,* 890 A.2d 1137 (Pa.Cmwlth.2006); *Risker v. Smith Twp. Zoning Hearing Bd.,* 886 A.2d 727 (Pa.Cmwlth.2005), *pet. for allowance of appeal denied,* 588 Pa. 766, 903 A.2d 1235 (2006).

 As noted, Section 504(13)(H) of the Ordinance provides, "[w]here an existing commercial advertising sign exists on a property proposing land development or alterations or enlargement of an existing use, said sign shall be removed." In analyzing Applicant's claim that the term "proposing" in Section 504(13)(H) is ambiguous, the ZHB observed the Ordinance does not define the term "proposing." Thus, the ZHB consulted the dictionary to define that term. For example, the ZHB observed Webster's Collegiate Dictionary defines "propose," in relevant part as: "**1:** to form or put forward a plan or intention **2** ... to engage in talk or discussion ... **1 a:** to set before the mind (as for discussion, imitation, or action) <*propose* a plan for settling the dispute> ... **2 a:** to set forth for acceptance or rejection <*propose* terms for peace> <*propose* a topic for

debate>" WEBSTER'S NEW COLLEGIATE DICTIONARY 933 (10th ed.2001).

Based on the dictionary definition of the term "propose," the ZHB determined Section 504(13)(H) of the Ordinance was clear and free from ambiguity. The ZHB stated, "That section of the [O]rdinance clearly requires that an existing commercial advertising sign be removed on property proposing land development or [alterations or] enlargement of an existing use." ZHB Op. at 9.

Applying Section 504(13)(H) here, the ZHB explained Landowner filed a land development plan proposing construction of an office complex and received preliminary approval. Additionally, the ZHB stated Landowner obtained a site alteration permit, issued on the premise site alteration would be performed consistent with an approved preliminary land development plan. The ZHB further determined Landowner is currently performing excavation work on the Subject Property that appears consistent with his land development plan. Upon review, we discern no abuse of discretion in the ZHB's interpretation and application of the plain language of Section 504(13)(H) of the Ordinance.

In addition, we reject Applicant's argument that "propose" should be interpreted to mean "occupied" or "used." Such an interpretation does not draw on the common usage of the word "propose."

Based on the foregoing, we affirm.

### *ORDER*

AND NOW, this 18th day of October, 2006, the order of the Court of Common Pleas of Monroe County is **AFFIRMED.**